**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SCOTT K. KELLER, Plaintiff, v. EXXONMOBIL OIL CORPORATION, Defendant. | Civil Action No.: 1:23-cv-01528-LTS |

**EXXONMOBIL OIL CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF PLAINTIFF'S EXPERT DR. RICHARD KRADIN, M.D.**

Of Counsel and On the Brief:

Dennis E. Vega, Esq.
William T. Miedel, Esq.

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES ............................................................ iii**

**PRELIMINARY STATEMENT ............................................................1**

**RELEVANT FACTUAL BACKGROUND ............................................3**

**APPLICABLE LAW ..............................................................................8**

**LEGAL ARGUMENT..........................................................................13**

**A. Dr. Kradin's Opinions Are Inadmissible Because He Failed To Apply Reliable Principles And Methods To Arrive At His Conclusions........14**

**B. Dr. Kradin's Opinion Cannot Survive *Daubert* Scrutiny.....................14**

**C. Dr. Kradin Failed to Rule Out Radon as a Possible Cause of Plaintiff's Lung Cancer Diagnosis ..........................................................17**

**D. Dr. Kradin's Testimony Is Irrelevant, Is A Waste Of Time And Will Mislead The Jury. ...............................................................18**

**E. Dr. Kradin's Testimony Has Been Precluded By Other Courts..........19**

**CONCLUSION.....................................................................................20**

# TABLE OF AUTHORITIES

## Cases

*Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996) .......... 16

*Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002) .......... 10, 11

*Anderson v. Ford Motor Co.*, No. 2:06-CV-741 TS, 2013 WL 3179497 at *6 (D. Utah. June 24, 2013) .......... 10

*Atl. Specialty Ins. v. AE Outfitters Retail Co.,* 970 F.Supp.2d 278, 291 (S.D.N.Y. 2013) .......... 12

*Bell v. Foster Wheeler Energy Corp.*, 2016 WL 5847124 at *3-*4 (E.D. La. Oct. 6, 2016) .......... 19

*Cavallo v. Star Enterprise*, 892 F. Supp. 756, 772 (E.D.Va. 1995) .......... 16

*Cedar Petrochem., Inc. v. Dongbu Hannong Chem. Co.*, 769 F.Supp.2d 269, 287-88 (S.D.N.Y. 2011) .......... 14

*Comardelle v. Penn. Gen. Ins.*, 76 F.Supp.3d 628, 635 (E.D. La. 2015) .......... 19

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) .......... passim

*Doolin v. Ford Motor Co.*, 2018 WL 4599712 at *12-*17 (M.D. Fla. Sept. 25, 2018) .......... 19

*Hanson v. Colgate-Palmolive Co.*, 353 F.Supp.3d 1273, 1290-92 (S.D. Ga. 2018) .......... 19

*In re Joint E. & S. Districts Asbestos Litig.,* 1993 WL 97301 at *1 (S.D.N.Y. Mar. 30, 1993) ... 18

*In re Pfizer Inc. Sec. Litig.*, 819 F3d 642, 665 (2d Cir. 2016) .......... 10

*In re Rezulin Products Liab. Litig.*, 309 F.Supp.2d 531, 540 (S.D.N.Y. 2004) .......... 12

*Krik v. Exxon Mobil Corp.*, 870 F.3d 669, 675-78 (7th Cir. 2017) .......... 3, 15

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) .......... 9

*Mancuso v. Consolidated Edison Co. of N.Y., Inc.*, 56 F. Supp. 2d 391, 399 (S.D.N.Y. 1999) ... 18

*McIndoe v. Huntington Ingalls, Inc.*, 817 F.3d 1170, 1177 (9th Cir. 2016) .......... 20

*Menne v. Celotex Corp.*, 861 F.2d 1453, 1462 (10th Cir. 1988) .......... 19

*Moeller v. Garlock Sealing Techs.,* 660 F.3d 950, 954-955 (6th Cir. 2011) .......... 17

*Nimely v. City of New York*, 414 F.3d 381, 396 n.11 (2d Cir. 2005) .......... 9

*Nook v Long Is. R. Co.*, 190 F Supp 2d 639, 642 (S.D.N.Y. 2002) .......... 11

*Oleg Cassini, Inc. v. Electrolux Home Prod., Inc.*, 2014 WL 1468118 at *1 (S.D.N.Y. Apr. 15, 2014)........................................................................................................................ 10, 14

*Parker v. Mobil Corp.*, 857 N.E.2d 1114, 1120-21 (N.Y. 2006).................................................... 8

*Pelton v. John Crane, Inc.*, No. 1:21-cv-4316, 2024 WL 361425, at *3-4 (N.D.Ill. Jan. 31, 2024) ........................................................................................................................ 15, 19, 20

*Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ............................................................. 12

*Roche v. Lincoln Property Co.*, 278 F.Supp.2d 744, 754 (E.D.Va. 2003).................................... 16

*Rockman v. Union Carbide Corp.*, 266 F. Supp. 3d 839, 849 (D. Md. 2017) ............................. 15

*Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 253 (2d Cir. 2005) ..................................... 9, 10

*Schultz v. Akzo Nobel Painters, LLC*, 721 F.3d 426, 432 (7th Cir. 2013) .................................... 16

*Sec. and Exch. Commn. v Yorkville Advisors, LLC*, 305 F.Supp.3d 486, 504 (S.D.N.Y. 2018) .. 11

*Smith v. Ford Motor Co.*, 2013 WL 214378 at *3 (D. Utah Jan. 18, 2013) .......................... 17, 19

*Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008)........................................... 13

*Suoja v. Owens-Illinois, Inc.*, 211 F.Supp.3d 1196, 1207-1208 (W.D. Wisc. 2016)................... 16

*U.S. v. Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000)................................................................. 11

*Vedros v. Northrop Grumman Shipbuilding, Inc.*, 119 F.Supp.3d 556, 563, fn. 2 (E.D. La. 2015) ........................................................................................................................ 3, 8

*Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 263 (4th Cir. 1999) ........................................ 16

*Wills v. Amerada Hess Corp.*, 379 F.3d 32, 49-50 (2d Cir. 2004)............................................... 13

*Yates v. Ford Motor Co.*, 113 F.Supp.3d 841, 846-847 (E.D.N.C. 2015) ............................. 14, 19

*Zellars v. NexTech Northeast, LLC*, 895 F.Supp.2d 734, 742 (E.D.Va.2012) ............................ 16

*Zuchowicz v. United States*, 140 F.3d 381, 383 (2d Cir. 1998) .................................................. 12

## **Rules**

Fed.R.Evid. 403 ........................................................................................................ 12, 18, 20

Fed.R.Evid. Rule 702 ................................................................................................... 8, 14, 15

**PRELIMINARY STATEMENT**

In this asbestos injury action, Plaintiff Scott Keller ("Keller" or "Plaintiff") alleges that he was exposed to asbestos aboard various vessels during his career as a cadet and merchant seaman between the years 1970 and 2013. The only Defendant that Plaintiff names in this lawsuit is ExxonMobil Oil Corporation ("Mobil Oil") despite the fact that Plaintiff had a forty-three-year sailing career, but only sailed with Mobil Oil during ten years of his career, between May of 1974 and January of 1984.[1]

Plaintiff intends to rely upon the opinions and testimony of various experts to fill crucial evidentiary factual gaps. Plaintiff relies upon his pathology expert, Richard L. Kradin, M.D. ("Dr. Kradin"), to establish that "Mr. Keller's lung cancer was caused by his cumulative exposure to asbestos while serving in the Merchant Marines." *See* Report of Dr. Richard L. Kradin dated January 4, 2024 ("Kradin Report") at p. 5 (attached hereto as Exhibit A). Dr. Kradin's opinion, however, does not rely on established facts and data pertaining to Plaintiff's alleged asbestos exposure aboard the Mobil Oil vessels that Plaintiff sailed aboard, and therefore Dr. Kradin's opinion is not supported by a reliable methodology. Dr. Kradin also fails to evaluate any potential exposure to radon in coming to his conclusions. *See generally* Exhibit A. On the other hand, Dr. Kradin readily admits that he "cannot exclude a contribution [to Plaintiff's lung cancer] from second-hand smoke while living in his parents' house and while serving on vessels." *Id.* at p. 5.

Rather than basing his opinion on any specific testing or any other objective measurement of the actual dose of asbestos that Plaintiff was allegedly exposed to aboard Mobil Oil vessels, Dr. Kradin's expert opinion is based on case studies of Merchant Seaman during different time periods,

---

[1] *See* Exxon's Rule 56.1 Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment ("Rule 56.1 Statement"), which is filed concurrently with the within motion.

who performed different duties than Plaintiff, on ships not at issue here. Kradin Report at p. 3.[2] Dr. Kradin even admits that Plaintiff's pathology shows no indicia of asbestos exposure, notably: "[t]here are no pleural plaques" and "[n]o asbestos bodies are present." *Id.* at pp. 4-5. Dr. Kradin does not rely on any methodology that is either discernible or objectively verifiable to support a dose-response relationship between Plaintiff's alleged asbestos exposure aboard Mobil Oil vessels and Plaintiff's lung cancer. *See generally id.*

Dr. Kradin's unreliable "methodology" is compounded by his sole reliance on lay opinions – in the form of Plaintiff's and his co-workers' testimony as to the alleged asbestos content of certain materials and their observations about what they believed to be asbestos fibers. *Id.* at pp. 3-4. This lay opinion testimony constitutes the sole basis for Dr. Kradin's opinion as to the existence of any asbestos-containing product that Plaintiff was exposed to. *Id.* at pp. 3-4. Dr. Kradin's opinion is also vague, equivocal, and fails to assist a jury in evaluating the validity of Plaintiff's claims.

Ultimately, Dr. Kradin's opinion is based on inadmissible lay witness causation testimony and studies unrelated to the actual exposures to asbestos that Plaintiff allegedly sustained aboard any Mobil Oil vessels. Plaintiff has advanced no reliable evidence about Mr. Keller's level (i.e., dose) of asbestos exposure aboard Mobil Oil vessels between 1974 and 1984. Further, any attempt by Dr. Kradin to offer specific causation testimony with respect to Exxon based on the purported "every exposure[3]" or "cumulative exposure" theory, or any substantially similar opinion, should

---

[2] The literature that Dr. Kradin relies on purportedly demonstrates: an increased risk of asbestos-related disease among merchant marines; a U.K. Registry showing 28 cases of mesothelioma among merchant seamen between 1960 and 1980; an increased risk of asbestos-related diseases among shipyard workers prior to 1946 and 1971, respectively; an increased incidence of mesothelioma among shipyard workers who started working prior to 1950; and an increased risk of asbestos-related diseases among those who served aboard various ships not related to this case.

[3] The "Every Exposure" theory "has other names, including "No Safe Level of Exposure," "Each and Every Exposure," "Any Exposure," and "Single Fiber". All theories have as their basis the principle that all exposures to asbestos should be included as a cause of mesothelioma because there is no way to know which exposures caused it

be excluded under FRE 403, as it has no probative value and there is a high risk of confusing and misleading the jury. *See Krik v. Exxon Mobil Corp.*, 870 F.3d 669, 675-78 (7th Cir. 2017). Further, under FRE 702, Dr. Kradin's opinion does not and cannot meet the reliability standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

For all these reasons, Mobil Oil moves this Court for an Order excluding Dr. Kradin's testimony and opinions, both as to general and specific causation.

## RELEVANT FACTUAL BACKGROUND

1. Plaintiff brought this lawsuit alleging that he was exposed to asbestos aboard various vessels during his career as a merchant seaman between the years 1974 and 2013. *See* Rule 56.1 Statement at ¶ 7.

2. The only Defendant sued in this matter is Mobil Oil, even though Plaintiff only sailed with Mobil Oil vessels during ten years of his career, between May of 1974 and January of 1984. *Id.*

3. Plaintiff was deposed in this matter on October 2, 2023. *See* Deposition Transcript of Scott Keller dated October 2, 2023 ("Keller Transcript") (attached hereto as Exhibit B).

4. Plaintiff testified that he attended the Maine Maritime Academy from August 1970 to April of 1974. Keller Dep. Tr. p. 45:8-10.

5. He was a merchant seaman with Mobil Oil from May of 1974 to January of 1984, where he testified to work involving thermal insulation during the portion of time he was present on steam tankers (but not while aboard diesel-powered towboats or tugboats). *Id.* at 117:20 to 119:3.

6. Plaintiff testified that he had no knowledge as to the composition or contents of any of the material he worked with and around on Mobil Oil vessels. *Id.* at 114:12 to 115:19.

---

and which ones did not...the Court finds no meaningful distinction between [these theories]" *See Vedros v. Northrop Grumman Shipbuilding, Inc.*, 119 F.Supp.3d 556, 563, fn. 2 (E.D. La. 2015).

7. After leaving Mobil Oil in 1984, Plaintiff went on to work for several different companies as a merchant seaman aboard non-parties' steam tankers until 2007, and then until 2013 aboard diesel tankers. *Id.* at 95:10 to 102:2.

8. During the course of discovery in this case, Plaintiff served a generic report from Dr. Kradin that makes no reference to any objective measurement of alleged asbestos exposure that Plaintiff claims aboard Mobil Oil vessels. *See generally* Kradin Report.

9. Although Dr. Kradin notes in his report that only "2-12% of lung cancers are related to occupational exposures to asbestos," he testified that he didn't need absolute data on asbestos dose in order to attribute lung cancer to asbestos exposure. Kradin Report at p. 2; Transcript from Deposition of Richard L. Kradin, M.D. on February 22, 2024 ("Kradin Dep. Tr.") (attached hereto as Exhibit C) at 40:3-12.

10. With no basis whatsoever, Dr. Kradin insists that the thermal insulation on pipes aboard the Mobil Oil vessels at issue would have contained chrysotile and amosite, and the gaskets and packing would have contained chrysotile, but admitted that he did not know the percentage of chrysotile or amosite in any of the products. Kradin Dep. Tr. at 22:9 to 24:21.

11. Dr. Kradin admitted that he did not look at radon or any other lung cancer contributing factors to arrive at his opinion that Mr. Keller's lung cancer was caused by asbestos and secondhand smoke. *Id.* at 25:16-25.

12. Dr. Kradin admits that radon is a carcinogen and that regulatory agencies and the medical literature support that radon is a carcinogen. *Id.* at 36:12-21.

13. Dr. Kradin admits that asbestos is a dose-response disease, and as you increase your exposure to asbestos, you increase your risk of developing lung cancer. *Id.* at 26:22 to 37:9.

14. The conclusions in Dr. Kradin's report mirror the oft-rejected "every exposure" theory.

15. Furthermore, despite the fact that Dr. Kradin acknowledges that asbestos-related lung cancer is a dose-response disease his report fails to rely on any asbestos dosage data and instead suggests that all exposures above background contribute to a cumulative dose. *See generally* Kradin Report; Kradin Dep. Tr. at 36:22 to 37:9.

16. Dr. Kradin reviewed Plaintiff's medical records, x-ray reports and pathology slides, and found that Plaintiff's "non-tumorous lung tissue is normal," and "[n]o asbestos bodies are present." Kardin Report at pp. 3-5.

17. Dr. Kradin testified that he also reviewed Plaintiff's pulmonary function tests from at least 2013 through 2023, which were all normal. Kradin Dep. Tr. at 44:15-20. Importantly, if Plaintiff had an asbestos-related illness, Dr. Kradin testified that you would find "restriction" on the pulmonary function tests, whereas if he had a smoking-related illness, he'd find "obstruction" on the pulmonary function test, but Mr. Keller had no evidence of restriction or obstruction since his tests were "normal." *Id.* at 45:12 to 49:25, 50:15 to 52:18.

18. Dr. Kradin testified about the medical findings associated with asbestos-related diseases or illnesses, other than mesothelioma and lung cancer, such as asbestosis, interstitial fibrosis, pleural plaques (both calcified and non-calcified), and pleural thickening, *id.* at 45:12-18, as well as other medical markers of asbestos-related injuries, such as (i) increased reticular nodule densities throughout the lungs, (ii) asbestos bodies, and (iii) diffuse scarring of the pleura. *Id.* at 45:12 to 49:25.

19. At Dr. Kradin's deposition, he admitted that after reviewing Plaintiff's PFTs, radiology reports and pathology slides, he saw no medical evidence of the following medical markers for an asbestos-related injury: (i) asbestosis, (ii) interstitial fibrosis, (iii) calcified pleural plaques, (iv) non-calcified pleural plaques, (v) pleural thickening, (vi) increased reticular nodule densities

throughout the lungs, (vii) asbestos bodies, or (viii) diffuse scarring of the pleura. Kradin Dep. Tr. at 45:12 to 49:25.

20. Dr. Kradin further testified about the medical findings associated with smoking related illnesses and medical markers such as (i) smoking related interstitial fibrosis, (ii) obstruction (iii) emphysematous changes with interstitial scarring within the lung, (iv) emphysema, (v) chronic bronchitis and (vi) Langerhans cell histiocytosis. *Id.* at 50:15 to 52:18.

21. Dr. Kradin admitted that based on his examination of the PFTs, radiology reports and pathology slides, he saw no evidence that Plaintiff had any markers for or was ever diagnosed and treated for (i) smoking related interstitial fibrosis, (ii) obstruction (iii) emphysematous changes with interstitial scarring within the lung, (iv) emphysema, (v) chronic bronchitis and (vi) Langerhans cell histiocytosis. *Id.*

22. Dr. Kradin acknowledges that within the scientific and medical community there is a split of opinion on the need for underlying asbestosis to be present in order to conclude that asbestos caused the lung cancer. *Id.* at 52:23 to 54:16.

23. Dr. Kradin agreed, however, that the scientific and medical community all agree that if the patient has asbestosis, then we can attribute that lung cancer to asbestos exposure. *Id.* at 60:6-13.

24. Dr. Kradin also acknowledged that within the scientific and medical community there is a split of opinion on the threshold level of fiber years of exposure to asbestos that is needed to conclude that asbestos caused the lung cancer. *Id.* at 55:12-24.

25. Dr. Kradin explained that to compute a lifetime exposure of 25 fiber years, the person would have to be exposed to one fiber per cc, over the course of one year, for 25 years. *Id.* at 62:14-23.

26. Dr. Kradin also acknowledged that within the community that believes a threshold level of asbestos fiber years are needed before they can conclude that asbestos caused the lung cancer, there is disagreement on the threshold level needed. Kradin Dep. Tr. at 56:1-7.

27. Despite that Dr. Kradin wrote in his expert report that the risk of developing lung cancer double with asbestos exposure of approximately 25 fiber-cc years, and he testified that there are statistical significance can be reached at two fibers per cc years, Dr. Kradin admitted that he does not know how many fiber-cc years Mr. Keller was exposed to during his time with Mobil Oil. *Id.* at 56:5 to 59:11; *see also* Kradin Report.

28. Despite Dr. Kradin's testimony that asbestos-related diseases are a dose-response diseases, i.e., "as you increase your exposure to asbestos, your risk [of] developing lung cancer and other diseases increase," Dr. Kradin takes a position contrary to his written report of 25 fiber-cc years as being the threshold, and testified that the only threshold dose below which he can say with certainty that asbestos played no role in causing lung cancer is the baseline level of ambient air. Kradin Dep. Tr. at 36:22 to 37:9.

29. The published literature from 1986 to present, however, shows that "the threshold for increased risk of lung cancer appears to be somewhere in the range of 25-100f/cc years." K. Browne, <u>A threshold for asbestos related lung cancer</u>, Brit. J. of Indus. Med., 558 (1986). Later studies, recognizing the vast difference in potency between asbestos fiber types, concluded that amosite is more than 80 times more potent that chrysotile. David H. Garabrant & Susan T. Pastula, <u>A comparison of asbestos fiber potency and elongate mineral particle (EMP) potency for mesothelioma in humans</u>, Toxicol Appl Pharmacol., 134 (2018) (finding amosite is 83 times more potent than chrysotile and that crocidolite is 376 times more potent than chrysotile).

30. With regard to Plaintiff's allegations of second-hand smoke exposure, Dr. Kradin was unable to identify a single smoking related marker on PFT, radiology report or pathology. Kradin Dep. Tr. at 50:15 to 52:18. Further, it is also undisputed that Plaintiff was never treated for emphysema, chronic obstructive pulmonary disease, or any other smoking-related illness.

31. Courts have ruled that this sort of flippant and haphazard inability to distinguish, through scientific analysis, one exposure from another amounts to nothing more than pure conjecture and is not grounded in science. *See Vedros v. Northrop Grumman Shipbuilding, Inc.*, 119 F.Supp.3d 556, 563, fn. 2 (E.D. La. 2015); *Parker v. Mobil Corp.*, 857 N.E.2d 1114, 1120-21 (N.Y. 2006).

## APPLICABLE LAW

The admissibility of expert testimony is governed by Federal Rule of Evidence 702:[4]

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

This Rule obligates the court to serve as a gatekeeper, ensuring "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). The proponent bears the burden of establishing by a preponderance of the evidence that the testimony complies with Rule 702's requirements. *See id.* at 593 n.10.

[4] Rule 702 of the FRE was recently amended, and this new Amendment took effect December 1, 2023. As set forth in the advisory committee's notes, the purpose of the amendment was to "clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule." Fed. R. Evid. 702 advisory committee's note to 2023 amendment. The amendment was aimed at courts that had erroneously held that "the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility." *Id.* Rather, the Rule 104(a) preponderance standard is to be applied before a court admits the expert opinion in the first place. *See id.* Furthermore, the amendment also served to "emphasize that each expert opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology." *Id.*

Whether a witness is qualified by his knowledge, skill, experience, training, or education is a "threshold question" that a court must resolve before determining whether his opinion is admissible. *Nimely v. City of New York*, 414 F.3d 381, 396 n.11 (2d Cir. 2005). "As the Supreme Court explained in Daubert, Rule 702 requires the district court to ensure that 'any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 253 (2d Cir. 2005) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)). In interpreting Rule 702, district courts, under *Daubert*, may consider the following non-exhaustive list of factors to determine whether evidence is sufficiently reliable: (1) whether a theory or technique had been and could be tested, (2) whether it had been subjected to peer review, (3) what its error rate was, and (4) whether scientific standards existed to govern the theory or technique's application or operation. *Nimely v. City of New York*, 414 F.3d 381, 396 (2d Cir. 2005). A "reliability assessment does not require, although it does permit, explicit identification of a relevant scientific community and an express determination of a particular degree of acceptance within that community." *United States v. Downing*, 753 F.2d, at 1238. *See also* 3 Weinstein & Berger ¶ 702[03], pp. 702–41 to 702–42. Widespread acceptance can be an important factor in ruling particular evidence admissible, and "a known technique which has been able to attract only minimal support within the community," *Downing*, 753 F.2d, at 1238, "may properly be viewed with skepticism." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 594, 113 S. Ct. 2786, 2797, 125 L. Ed. 2d 469 (1993). In *Kumho Tire Co. v. Carmichael*, the Supreme Court held that the trial judge's gatekeeping obligation applies not only to testimony based on "scientific" knowledge, as in *Daubert*, but also to testimony based on "technical" or "other specialized" knowledge. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

Likewise, where "an expert opinion is based on data ... [or] a methodology ... that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002) (internal citation omitted); *see also, In re Pfizer Inc. Sec. Litig.*, 819 F3d 642, 665 (2d Cir. 2016); *Ruggiero v Warner-Lambert Co.*, 424 F3d 249, 253 (2d Cir. 2005). In deciding whether an expert's opinion is unreliable, a district court must "rigorous[ly]" examine the facts on which the expert relies, the expert's method, and how the expert applies the facts and methods. *Amorgianos*, 303 F.3d at 267. Indeed, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *In re Pfizer Inc. Sec. Litig.*, 819 F3d 642, 665 (2d Cir. 2016).

The recent amendments to Rule 702 solidify the notion that expert testimony must be of sufficient quality and reliability so that jurors are not misled by unreliable evidence. A plaintiff's experts' theory is inadmissible given a failure to base their opinions on facts specific to the case. *See* Rule 702(d) (requiring the expert to reliably apply the principles and methods to the facts of the case). Indeed, as other courts have cautioned when considering an expert's admissibility, "the Court must base its opinion on the facts and testimony presented in *this* case, rather than on the testimony of experts in other cases." *Anderson v. Ford Motor Co.*, No. 2:06-CV-741 TS, 2013 WL 3179497 at *6 (D. Utah. June 24, 2013) (emphasis added)." Further, the "opinion of a highly qualified expert witness using a well-accepted methodology is nevertheless unreliable, and therefore inadmissible, if the expert fails to explain how her opinion follows logically from the application of the methodology to the **specific facts of the case**." *Oleg Cassini, Inc. v. Electrolux Home Prod., Inc.*, 2014 WL 1468118 at *1 (S.D.N.Y. Apr. 15, 2014) (emphasis added). The immense disconnect in this matter warrants exclusion of Plaintiff's expert.

In *Nook v. Long Is. R. Co.*, the court excluded a proposed expert's opinion because it lacked scientific or technical reliability. In this regard, the court noted that none of his opinion was based on testing or objective data regarding the "actual conditions under which decedent allegedly worked on the date in question." *Nook v Long Is. R. Co.*, 190 F Supp 2d 639, 642 (S.D.N.Y. 2002). The court further highlighted that, rather than base his opinion on "any information as to what constitutes an 'excessive' level or as to whether the conditions at the time in question equaled or exceeded such a level," the expert instead improperly resorted to hypothetical "potential" and assumed unsupported "facts." *Id.* at 643.

Under *Daubert v. Merrell Dow Pharm., Inc.*, the court must first address whether the expert's testimony is based on "scientific knowledge," and then determine whether the testimony "will assist the trier of fact to understand or determine a fact in issue." *Daubert,* 509 U.S. at 592. The first question is answered by assessing "whether the reasoning or methodology underlying the testimony is scientifically valid." *Id.* at 592–93. Several factors should be considered when determining the reliability of a particular scientific theory or technique: whether it (1) can be and has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error; and (4) has attained general acceptance in the pertinent scientific community. *See U.S. v. Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000) (citing *Daubert*, 509 U.S. at 593–94); *see also*, *Amorgianos*, 303 F.3d at 266. The "party seeking to introduce the expert testimony bears the burden of establishing by a preponderance of the evidence that the proffered testimony is admissible." *Sec. and Exch. Commn. v Yorkville Advisors, LLC*, 305 F.Supp.3d 486, 504 (S.D.N.Y. 2018).

In deciding whether a step in an expert's analysis is unreliable, the district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the

expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand. *See Amorgianos, supra*. The focus "must be solely on principles and methodology, not on the conclusions that they generate." *See Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (court is concerned "not [with] the correctness of the expert's conclusions but the soundness of his methodology."); *In re Rezulin Products Liab. Litig.*, 309 F.Supp.2d 531, 540 (S.D.N.Y. 2004). "Expert testimony that rests on merely subjective belief or unsupported speculation is inadmissible and should be precluded." *See Yorkville Advisors, supra,* quoting *Atl. Specialty Ins. v. AE Outfitters Retail Co.,* 970 F.Supp.2d 278, 291 (S.D.N.Y. 2013). Likewise, if an opinion is based on "a methodology" that is "simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642, 665 (2d Cir. 2016) quoting *Amorgianos,* 303 F.3d at 266, *supra*.

To establish causation, plaintiff "must offer admissible expert testimony regarding both general causation . . . **and specific causation**." *See Zuchowicz v. United States*, 140 F.3d 381, 383 (2d Cir. 1998) ("There is . . . no older requirement in this area of the law than the need to show such a link [i.e., medical causation] between the defendant's actions and the plaintiff's loss."); *Amorgianos*, 303 F.3d at 268.

The second inquiry "goes primarily to relevance." *Daubert*, 509 U.S. at 591. Relevance is determined by ascertaining whether the testimony is sufficiently tied to the facts of the case such that it will aid the jury in resolving an important factual dispute. *Id.* at 593. FRE 403 empowers the Court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed.R.Evid. 403. Courts are afforded broad discretion in deciding evidentiary matters, particularly under 403, which

"requires an 'on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant.'" *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008) (quoting 1 Childress & M. Davis, Federal Standards of Review §4.02, p 4-16 (3d ed. 1999)).

**LEGAL ARGUMENT**

Rather than basing his opinion on any specific testing or any other objective measurement of the actual dose of asbestos that Plaintiff was allegedly exposed to aboard Mobil Oil vessels, Dr. Kradin's expert opinion is based on case studies of Merchant Seaman during different time periods when asbestos was widely used, who performed different duties than Plaintiff, on ships not at issue here, and during an earlier time period when fewer safeguards were in place. Dr. Kradin even admits that Plaintiff's pathology shows no indicia of asbestos exposure, notably: "[t]here are no pleural plaques" and "[n]o asbestos bodies are present." Kradin Report at pp. 4-5. Dr. Kradin does not rely on any methodology that is either discernible or objectively verifiable to support a dose-response relationship between Plaintiff's alleged asbestos exposure aboard Mobil Oil vessels and Plaintiff's lung cancer. *See generally id.*

Dr. Kradin's unreliable "methodology" is compounded by his sole reliance on lay opinions – in the form of Plaintiff's and his co-worker's lay testimony – as to the amount of alleged asbestos fibers that Plaintiff was exposed to. Kradin Report at pp. 3-4. Dr. Kradin's opinion is vague, equivocal, and fails to assist a jury in evaluating the validity of Plaintiff's claims. Ultimately, Dr. Kradin's opinion is based on inadmissible lay witness causation testimony and studies unrelated to the actual exposures to asbestos that Plaintiff allegedly sustained aboard any Mobil Oil vessels. *See Wills v. Amerada Hess Corp.*, 379 F.3d 32, 49-50 (2d Cir. 2004). Further, any attempt by Dr. Kradin to offer specific causation testimony with respect to Exxon based on the purported "every

exposure" or "cumulative exposure" theory, or any substantially similar opinion, should be excluded under FRE 403, as it has no probative value and there is a high risk of confusing and misleading the jury. *See Krik*, 870 F.3d at 677; *Wills*, 379 F.3d at 48-49. Further, under FRE 702, his opinion does not and cannot meet the reliability standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

**A. Dr. Kradin's Opinions Are Inadmissible Because He Failed To Apply Reliable Principles And Methods To Arrive At His Conclusions.**

A disconnect between an expert's methodology and the specific facts of a case is fatal to admissibility: "The opinion of a highly qualified expert witness using a well-accepted methodology is nevertheless unreliable, and therefore inadmissible, if the expert fails to explain how her opinion follows logically from the application of the methodology to the **specific facts of the case**." *Oleg Cassini*, 2014 WL 1468118 at *1 (emphasis added). Plaintiff bears the burden of showing that his expert reasonably applied reliable methods to those facts. *Cedar Petrochem., Inc. v. Dongbu Hannong Chem. Co.*, 769 F.Supp.2d 269, 287-88 (S.D.N.Y. 2011); *Fed. R. Evid.* § 702; *see also Amorgianos*, 303 F.3d at 265. The Court is tasked with conducting a rigorous examination of not only the facts an expert relies on, but *how* the expert applies the facts and methods to the case at hand. *Amorgianos*, 303 F.3d at 267.

**B. Dr. Kradin's Opinion Cannot Survive *Daubert* Scrutiny.**

"A trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 590. Scientific knowledge implies a grounding in the methods and procedures of science, rather than unsubstantiated speculation. *Id.* Applying the *Daubert* factors, courts have found that the "every exposure" theory and its progeny cannot be tested, have not been published in peer-reviewed works, and have no known error rate. *Yates v. Ford Motor Co.*, 113 F.Supp.3d 841, 846-847 (E.D.N.C. 2015). Courts have

acknowledged that mesothelioma and other asbestos-related cancers are dosage-dependent or "dose-responsive" diseases, meaning that the risk of contracting the disease depends on the length of time of exposure and the dosage of asbestos. *See Krik*, 870 F.3d at 674.

With no reasonable quantification of Plaintiff's level of alleged asbestos exposure aboard Mobil Oil vessels, Dr. Kradin is forced to fall back and take the untenable and oft-rejected position that "each and every dose" above background is a substantial cause of Plaintiff's injury.[5] As outlined by lung transplant surgeon Dr. David Weill, the respiratory system has various layers of defense mechanisms that block and eliminate dust throughout the length of the respiratory tract, so it is impossible that each and every dose is a substantial cause of lung cancer when many fibers are expelled from the lung.

As detailed in Mancuso et al., there must be some expression of the level of toxin to which Plaintiff was exposed in order for Dr. Kradin to have a foundation for his opinion that that level of toxin caused Plaintiff's injury. It is this evidence that is missing from Plaintiff's experts' reports. Fatal to Plaintiff's causation argument is that nowhere in Mr. Corbin's report or testimony does Mr. Corbin quantify Plaintiff's alleged dose of asbestos during Plaintiff's time aboard Mobil Oil vessels.

The Eastern District of North Carolina offered an instructive discussion on meaningful scientific analysis of the effects of chemical agents on the human body:

[5] Plaintiff experts re-characterize this theory in various ways depending on the law of the jurisdiction in which they are testifying, including that "each and every breath of asbestos-containing air contributes," "each and every inhaled asbestos fiber contributes," there is "no safe level" of asbestos exposure, "each and every exposure above background contributes," "each significant, special or occupational exposure contributes," and "the cumulative dose caused the disease." *See, e.g., Rockman v. Union Carbide Corp.*, 266 F. Supp. 3d 839, 849 (D. Md. 2017). Federal courts have recognized that, regardless of how Dr. Kradin and others frame their opinions, they are all some derivation of the deficient "each and every exposure" theory. See Krik, 870 F.3d at 675 ("We agree that Dr. Frank's cumulative exposure theory was no different from the 'each and every exposure' theory [which this Court had previously excluded under *Daubert*] in all relevant ways."); *see also Pelton v. John Crane, Inc.*, No. 1:21-cv-4316, 2024 WL 361425, at *3-4 (N.D.Ill. Jan. 31, 2024) (excluding the specific causation opinions of Dr. Richard Kradin based on the "cumulative dose" and "each and every exposure" theories under FRE 702 and *Daubert*).

> To prove that a given injury was "caused by exposure to a specified substance," a plaintiff must demonstrate "the levels of exposure that are hazardous to human beings generally," and "the plaintiff's actual level of exposure*." Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 263 (4th Cir. 1999) (quotations omitted). Moreover, there must be a showing that the plaintiff's level of exposure is comparable to the levels of exposure that are hazardous as a general matter. *See id.,* ("[S]cientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to *such quantities,* are minimal facts necessary to sustain the plaintiffs' burden in a toxic tort case.") (emphasis added) (quoting *Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996)); *see also Zellars v. NexTech Northeast, LLC*, 895 F.Supp.2d 734, 742 (E.D.Va.2012) ("'Ruling in' exposure to a particular substance as a possible cause of a patient's medical condition requires (1) a reliable determination of the level of exposure necessary to cause the condition, and (2) a reliable determination that the patient was exposed to the substance at this level.").
>
> The Fourth Circuit and other courts have applied these principles not only to assess the sufficiency of the evidence supporting plaintiff's case, but also to consider whether expert testimony on causation is reliable. *See Westberry*, 178 F.3d at 263; *Zellers v. NexTech Northeast, LLC*, 533 Fed.Appx. 192, 198 (4th Cir. 2013) (affirming exclusion of expert for failure to demonstrate plaintiff's actual level of exposure); *Roche v. Lincoln Property Co.*, 278 F.Supp.2d 744, 754 (E.D.Va. 2003) (excluding expert on finding that he "lack[ed] any knowledge of the levels of exposure to mold required to manifest any symptoms."); *Cavallo v. Star Enterprise*, 892 F. Supp. 756, 772 (E.D.Va. 1995) (excluding opinion when expert "could cite no studies or published literature to support adverse effects *from that level* of exposure to [the specific toxic agent]."), *aff'd in relevant part,* 100 F.3d 1150 (4th Cir.1996). Such standards consistent with a "central tenet" in the science of the harmful effects of chemical and physical agents on organisms—**"the dose makes the poison," i.e. "all chemical agents are intrinsically hazardous, whether they cause harm is only a question of dose**." Bernard D. Goldstein and Mary Sue Henifin, "Reference Guide on Toxicology," in *Federal Reference Manual on Scientific Evidence,* 636 (3d ed.2011).

*Yates*, 113 F.Supp.3d at 850-851 (emphasis added). The sort of testimony offered by Dr. Kradin in this case has been held to contribute minimally to a court's analysis. *See Suoja v. Owens-Illinois, Inc.*, 211 F.Supp.3d 1196, 1207-1208 (W.D. Wisc. 2016) ("a causation expert who accounts only for exposure and not for dosage adds nothing to the analysis."); *Schultz v. Akzo Nobel Painters, LLC*, 721 F.3d 426, 432 (7th Cir. 2013) ("[T]he notion that it is theoretically possible that any amount of exposure could cause injury is different from an opinion that the

particular level of dosage experienced by a plaintiff was sufficient to cause his or her injury."); *Moeller v. Garlock Sealing Techs.,* 660 F.3d 950, 954-955 (6th Cir. 2011) (plaintiff's causation theory more "akin to saying that one who pours a bucket of water into the ocean has substantially contributed to the ocean's volume."); *Smith v. Ford Motor Co.*, 2013 WL 214378 at *3 (D. Utah Jan. 18, 2013) ("just because we cannot rule anything out does not mean we can rule everything in"). "Science is not an encyclopedic body of knowledge about the universe. Instead, it represents a *process* for proposing and refining theoretical explanations about the world that are subject to further testing and refinement." *See Daubert*, 509 U.S. at 590. No such scientific *process* is present here. Dr. Kradin's opinion fatally overlooks the dose-response relationship and fails to explain to this Court the scientific *process* he adopts to conclude that exposure to asbestos caused Plaintiff's lung cancer. Dr. Kradin's opinion and testimony should, therefore, be excluded.

### C. **<u>Dr. Kradin Failed to Rule Out Radon as a Possible Cause of Plaintiff's Lung Cancer Diagnosis</u>**

Equally fatal to Dr. Kradin's expert testimony in this case is his complete lack of any consideration as to radon exposure, especially where Plaintiff lived in EPA red zones for radon for the majority of his life, and in a case involving lung cancer where Plaintiff alleges to have never been a smoker and radon has been found to be the number one cause of lung cancer in non-smokers.[6] This failure undermines any specific causation testimony he could attempt to provide because it highlights Dr. Kradin's haphazard approach to medical causation by rule in every dose of asbestos as a cause of disease without ever considering alternate causes of disease.

[6] *See Health Risk of Radon: Exposure to Radon Causes Lung Cancer in Non-Smoker and Smoker Alike*, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, available at https://www.epa.gov/radon/health-risk-radon (Health Risk of Radon | US EPA) (last accessed May 7, 2024) (stating that "[r]adon is the number one cause of lung cancer among non-smokers, according to EPA estimates. Overall, radon is the second leading cause of lung cancer [after smoking]").

Specifically, in a cancer such as lung cancer which has several possible causes, Dr. Kradin's failure to perform any form of differential diagnosis assessing the possible role of radon in causing Mr. Keller's cancer clearly shows that his methodology is defective, and therefore not reliable. *See Mancuso v. Consolidated Edison Co. of N.Y., Inc.*, 56 F. Supp. 2d 391, 399 (S.D.N.Y. 1999) (explaining that the methodology for determining whether a person's illness was caused by a specific toxin includes a differential diagnosis that weighs the possibility of other causes of the illness).

### D. <u>Dr. Kradin's Testimony Is Irrelevant, Is A Waste Of Time And Will Mislead The Jury.</u>

Under FRE 403, even relevant evidence must be excluded from trial if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Here, in order to provide relevant testimony, Dr. Kradin would have to opine based on reliable ***data*** that Mr. Keller was exposed to a sufficient dose of asbestos while serving aboard an Exxon ship as a merchant seaman. But Dr. Kradin acknowledged that he had no such information about any of the critical details to properly assess Mr. Keller's exposure and admitted that he had no way of knowing how much asbestos Mr. Keller was exposed to aboard Mobil Oil vessels. In the absence of any medical markers for an asbestos-related disease, there is simply no factual basis for Dr. Kradin to offer any opinion as to Mobil Oil in this case.

Under New York law, a plaintiff "has the burden of proving to the jury that he was exposed to the defendants' products and that it is more likely than not that this exposure was a *substantial factor* in his injury." *In re Joint E. & S. Districts Asbestos Litig.,* 1993 WL 97301 at *1 (S.D.N.Y. Mar. 30, 1993). Absent direct evidence of causation, a party may satisfy the substantial-factor test by demonstrating that the injured person had substantial exposure to the relevant asbestos-

containing product for a substantial period of time. *See Menne v. Celotex Corp.*, 861 F.2d 1453, 1462 (10th Cir. 1988) ("[m]ore significant under traditional causation tests than the question of mere exposure to [asbestos-containing] products is whether the exposure was sufficiently sustained (or frequent) and intense to constitute a proximate cause of [the plaintiff's] mesothelioma."). These facts are lacking here.

The "every exposure" theory posits that "each and every exposure to asbestos by a human being who is later afflicted with mesothelioma [or lung cancer], contributed to the development of the disease." *See Smith*, 2013 WL 214378 at *1 (testimony based on the cumulative/any exposure theory is inadmissible speculation devoid of scientific support); *see also Yates*, 113 F.Supp.3d at 846 (opinion represents the viewpoint that because science has failed to establish that any specific dosage of asbestos causes injury, every exposure to asbestos should be considered a cause of the injury). Here, Dr. Kradin's opinion assesses causation in a manner that is entirely inconsistent with governing legal standards and will prejudice Exxon.

**E. <u>Dr. Kradin's Testimony Has Been Precluded By Other Courts</u>**

Other Courts have precluded Dr. Kradin from testifying about specific causation in prior cases involving alleged asbestos exposure. *See Pelton v. John Crane, Inc.*, 2024 WL 361425 at *3-*4 (W.D. Ill. Jan. 31, 2024); *Hanson v. Colgate-Palmolive Co.*, 353 F.Supp.3d 1273, 1290-92 (S.D. Ga. 2018); *Doolin v. Ford Motor Co.*, 2018 WL 4599712 at *12-*17 (M.D. Fla. Sept. 25, 2018); *Bell v. Foster Wheeler Energy Corp.*, 2016 WL 5847124 at *3-*4 (E.D. La. Oct. 6, 2016) ("The Court will not allow plaintiffs' experts to entirely rely on evidence of general causation to offer the 'specific causation opinion *<u>in this case</u>*' …" (emphasis in original)) (citing to *Comardelle v. Penn. Gen. Ins.*, 76 F.Supp.3d 628, 635 (E.D. La. 2015)). The Court in *Pelton* held that:

> [Dr. Kradin] simply may not testify that each (or all) of a person's occupational level exposures, being above background levels, cause

> or constitute a substantial contributing factor to mesothelioma, or more critically, that Mr. Pelton's malignant mesothelioma was caused by "his cumulative exposure to asbestos, predominantly with Crane valves and John Crane gaskets."

*Pelton*, 2024 WL 361425 at *4.

Dr. Kradin's sweeping, conclusory and unsubstantiated statements espouse a "theory of liability which would render the substantial-factor essentially meaningless." *See Lindstrom*, 424 F.3d at 493. This is precisely the sort of unbounded liability that the substantial factor test was developed to limit." *See McIndoe v. Huntington Ingalls, Inc.*, 817 F.3d 1170, 1177 (9th Cir. 2016) (omitting internal citations). Dr. Kradin's opinion is simply misleading and will only serve to confuse a jury about appropriate causation standards under New York law and waste this Court's time with an opinion that superficially sounds like expertise but lacks all details required to actually prove causation at trial, either general or specific. His prejudicial opinion should, therefore, be excluded under FRE 403.

## CONCLUSION

Dr. Kradin has failed to follow a reliable methodology and has arrived at his conclusions in the absence of the data that experts in his field require in order to form scientifically valid opinions, and without considering other potential causes of Plaintiff's diagnosis. Moreover, his opinions and testimony are irrelevant and would mislead the jury. For the foregoing reasons, Exxon respectfully urges this Court to grant this Motion for an Order excluding the testimony and opinions of Plaintiff's expert, Dr. Richard Kradin.

Dated: May 8, 2024

RESPECTFULLY SUBMITTED,

Dennis E. Vega
Dennis E. Vega, Esq.
William T. Miedel, Esq.
**TANENBAUM KEALE LLP**
Three Gateway Center

100 Mulberry Street, Suite 1301
Newark, New Jersey 07102
(973) 242-0002 (T)
(973) 242-8099 (F)
dvega@tktrial.com
wmiedel@tktrial.com
*Attorneys for Defendant*
*ExxonMobil Oil Corporation*