# KRADIN CONSULTING, LLC

**Richard L. Kradin, M.D., DTM&H**
15 Constitution Drive (Suite 1A)
Bedford, NH 03110

Tel: (781)367-3641
Email: richardkradin@gmail.com

Honorary Pathologist and Physician
*Massachusetts General Hospital*

Associate Professor Emeritus of Medicine and Pathology
*Harvard Medical School*

Adjunct Faculty, Hadassah Hospital,
Jerusalem IL


January 4, 2024

Lane Andrae
Motley Rice
28 Bridgeside Boulevard
Mount Pleasant
SC 29464
ph: (843) 216-9000
fax: (843) 216-9450

**RE: SCOTT K. KELLER DOB:03-02-1951**

My name is Richard L. Kradin, M.D., D.T.M & H. I am over 18 years of age and issue this report based on my personal knowledge. The following opinions and statements are made with a reasonable degree of medical probability based on my knowledge, experience, expertise and training, on generally accepted medical and scientific principles, and on peer-reviewed and published literature described herein. The methodology and basis for these opinions are not novel, are generally accepted in the medical and scientific community, and have been subjected to peer-review and publication. While I may not agree with every sentence of every document cited herein, the materials discussed below are sufficient to form a reliable basis for my opinions, and they are the types of materials that I and other doctors normally rely upon to formulate our opinions in the everyday practice of medicine, and outside of the litigation context.

## QUALIFICATIONS

I am a pulmonologist and pathologist licensed to practice in Massachusetts and Florida. I have specialized in pulmonary disease for over 38 years. I am board certified in Internal Medicine, Anatomic Pathology, and Pulmonary Medicine. My areas of sub-specialization include pulmonary pathology and autopsy pathology.

I am an Associate Physician and Associate Pathologist (Honorary) at Massachusetts General Hospital, and an Emeritus Associate Professor of Pathology and Associate Professor of Medicine at Harvard Medical School. In addition to my M.D., I have an advanced degree in chemical physics and have studied epidemiology at the London School of Hygiene.

Since the 1980s, I have had a special interest in the clinical features and pathology of asbestos-related diseases. I have directed postgraduate work on asbestos-related diseases at Harvard Medical School and have been the Principal Investigator on several research projects. I have served as the Director of a yearly seminar on asbestos-related pulmonary disease and co-director of a yearly seminar on thoracic pathology, both through the Harvard Medical School. I routinely read the literature concerning fiber-release from

various asbestos containing products, including insulation products, and the effects of asbestos on the human body. I am familiar with what has been published regarding the level of asbestos present in the ambient air.

I have authored more than 200 articles, some of which are related to asbestos and the diseases it causes. I have authored four textbooks of pathology. I have conducted research on the immunological defenses of the lung to soluble and particulate agents and have been the Principal Investigator for National Institutes of Health-sponsored clinical trials of the immunotherapy of lung and other cancers.

In addition to my research and teaching, I have personally cared for patients with both benign and malignant asbestos-related diseases and have frequently had the opportunity to review pathology specimens from patients with asbestos-related diseases at Massachusetts General Hospital, as well as cases sent to me from outside sources for my opinion based on my expertise with the diagnoses of these disorders. I have reviewed hundreds of biopsies of benign and malignant asbestos-related diseases and have performed numerous autopsies in patients with asbestos-related diseases.

Since the 1980s I have testified in court on many occasions as an expert on asbestos-related diseases, including in personal injury trials in various states, including the States of Hawaii, Louisiana, Texas, California, Pennsylvania, Maryland, as well as others. I have been an expert witness in asbestos litigation on behalf of the U.S. Government. My qualifications are more fully described on my Curriculum Vitae.

## 1. ASBESTOS AND LUNG CANCER

The first cases of lung cancer attributed to asbestos were reported in the early 20th CE. In 1955, Doll showed that lung cancers occurred with increased frequency in asbestos workers. (*Mortality from Lung Cancer in Asbestos Workers*. Br. J. Industrial Med. 1955. 12:81) It has been estimated that 2-12% of lung cancers are related to occupational exposures to asbestos. (see Henderson, Chapter 6 in <u>Asbestos and Cancer of the Lung, in Asbestos Risk Assessment, Epidemiology and Health Effects</u>, 2nd Ed. Dodson and Hammar, 2011, CRC Press)

In a recent follow-up study on the North American Asbestos Workers cohort, studied by Selikoff and co-workers, Markowitz showed that there was a statistical increase in the incidence of lung cancer in non-smokers (3.6x control) and that the effects with smoking were either additive with smoking (14x control) or supra-additive if the workers had concomitant asbestosis (36 x control). (Markowitz et al. *Asbestos, asbestosis, smoking, and lung cancer. New findings from the North American insulator cohort*. Am J Respir Crit Care Med. 2013 188:90) The risk of developing lung cancer after smoking cessation of >30 years was essentially the same as those who were exposed to asbestos and had never smoked. Despite estimates that the relative risk/odd ratio of developing lung cancer following asbestos exposure double with exposures of ~25 fiber-cc years, multiple studies have demonstrated that the risk of lung cancer is both dose-dependent and can be demonstrated statistically with 2-3 fiber-years of exposure. (see Henderson, Chapter 6 <u>Asbestos and Cancer of the Lung, in Asbestos Risk Assessment, Epidemiology and Health Effects</u>, 2nd Ed. Dodson and Hammar, 2011, CRC Press) Therefore, it is nearly impossible to exclude occupational exposure to asbestos as a cause of lung cancer with confidence. Furthermore, all histological types of lung cancer have been shown by Churg et al to be associated with asbestos exposure. Although controversy persists on the topic, there is ample evidence to suggest that one need not have evidence of concomitant asbestosis to attribute a lung cancer to asbestos.

## 2. ASBESTOS AND THE MERCHANT MARINES

Members of the merchant marines have been demonstrated to be at increased risk for all asbestos-related diseases including lung cancer. (see Lemen, Chapter 5 in Asbestos and Cancer of the Lung, in Asbestos Risk Assessment, Epidemiology and Health Effects, 2nd Ed. Dodson and Hammar, 2011, CRC Press) Maintenance of equipment at sea can potentially result in high exposures to asbestos. Flaking and cracking of old asbestos insulation is common due to motion of seafaring vessels. In the United Kingdom's National Mesothelioma Register, 28 cases were identified among seamen. Lung cancer was directly related to the duration of employment in a case-control study of merchant seamen between 1960 and 1980. (Sarrni et al. *Cancer at Sea: A Case Control Study among Male Finnish Seafarers*. Occup Environ. Med. 2002. 59:6133)

## 3. SHIPYARDS AND NAVAL VESSELS

Workers in shipyards in the 20th century were at increased risk for the development of asbestos-related disease. Studies by Fleischer (Fleischer et al. *A health survey of pipe covering operations in constructing Navy vessels.* J Indust Hyg Tox. 1946. 28:9) and Harries (Harries, P. G. *A comparison of mass and fibre concentrations of asbestos dust in shipyard insulation processes*. Ann Occup Hyg. 1971. 14:235) both showed markedly increased ambient levels of asbestos (as high as thousands of fibers/cc) during the cutting and removal of thermal insulation. These levels are millions of times that of the ambient air and constitute a substantial risk to workers and bystanders for the development of malignant mesothelioma and other asbestos diseases.

A case-control study by Tagnon et al showed a four-fold increased incidence of mesothelioma among white males in coastal Tidewater, Va., from 1972 to 1978. Sixty-one cases were identified. Interviews with next of kin revealed that the excess was linked to employment in area shipyards. Three-fourths of the cases had been employed in the shipbuilding industry, nearly all beginning employment prior to 1950. Most were career employees, but an increased risk was also found among those who worked only temporarily, mainly during World War II, and were reportedly exposed to asbestos.

Lemen and Landrigan (*Sailors and the Risk of Asbestos-Related Cancer*. Int. J. Environ. Res. Public Health) have recently studied the risk of asbestos-related disease in sailors. Sailors are at high risk of exposure to shipboard asbestos because, unlike shipyard workers and other occupationally-exposed groups, sailors both work and live at their worksite, making asbestos standards and permissible exposure limits (PELs) based on an 8-h workday inadequate to protect their health from elevated risks of mesothelioma and other asbestos-related cancers that have been observed among sailors through epidemiologic studies.

## 4. CASE-SPECIFIC CAUSATION OPINIONS:

### SCOTT K. KELLER DOB:03-02-1951

**Materials Reviewed:** Received October 17, 2023: Medical records from Intermed Health, Maine Medical Center, and Chest Medicine Associates, a Vessel Service History and Certificates of Discharge, the deposition transcripts of Scott Keller and co-workers, Michael Nedvesky and James Bolton, and 50 unstained replicate slides labeled SS20-07290, from which 5 slides (A1-A4, A6) were stained with H&E.

**Medical History**: In March of 2020, Mr. Keller was a 69-year-old man who presented to Intermed Health with chronic cough.

Past medical history included hypertension, hyperlipidemia, insulin-dependent diabetes mellitus type II, chronic kidney disease, obesity, benign prostatic hyperplasia, Covid-19, and asthma.

CT scans of the chest showed an ~1 cm mass in the right lower lobe, that was first noted in 2013, but was slowly expanding.

PET CT scans showed intense FDG-uptake in the mass.

Pulmonary function tests showed normal lung flow rates, volumes, and diffusing capacity.

A right lower lobe superior segmentectomy showed adenocarcinoma of pulmonary origin, clinical stage 1A, with no evidence of lymph node or distant metastasis.

The last note in the record is from March 2023. As of that time there was no definite evidence of radiographic recurrence of tumor.

**Exposure History:** The medical record indicates that Mr. Keller had served in the Merchant Marines.

He testified that his father had worked for Boeing but did not think that he had worked around asbestos.

He was a never-smoker, but both of his parents were cigarette smokers and smoked in the house, and his fellow crew members smoked cigarettes on the vessels where he worked and lived.

He attended Maine Maritime Academy from 1970 until 1974.

He worked with insulation on mock-up boilers, as part of his training, but was not certain whether it contained asbestos.

He worked on a Babcock-Wilcox boiler on a training ship and with insulation, mud, cloth, and gaskets but, again, was not certain whether he was exposed to asbestos.

Following graduation from the Academy he was employed by Mobil Corp. aboard the Mobil-La Crosse, as a Third Assistant Engineer, and worked at maintenance and repairs.

He subsequently worked as an Engineer on a series of steam driven Mobil vessels through the 1980s, and retired from the Merchant Marines in the 1990s.

He worked in the engine rooms with pumps, valves, and winches, gaskets and packing under dusty conditions.

**Pathology:** The lung resection shows a mucinous adenocarcinoma with acinar and lepidic growth and prominent spread through airspaces.

The tumor cells were by report immunopositive for TTF-1 and CK7 and immunonegative for CK20 and CDX-2, consistent with a pulmonary primary.

The non-tumorous lung tissue is normal.

There are no pleural plaques.

No asbestos bodies are present.

**Conclusion:** Mr. Keller has diagnosed with stage 1A pulmonary adenocarcinoma, mucinous type, without evidence of recurrence three years post-resection.

He was a never-smoker but was exposed to second-hand smoke in his parents' house.

It is my opinion to a reasonable degree of medical probability that Mr. Keller's lung cancer was caused by his cumulative exposures to asbestos while serving in the Merchant Marines. I cannot exclude a contribution from second-hand smoke while living in his parents' house and while serving on vessels.

The prognosis for pulmonary invasive mucinous adenocarcinoma is uncertain. The tumor, even when localized as in this case, has a propensity to spread through airspaces and to recur. The prognosis depends in part on the presence of mutations, including K-RAS in the tumor. Most studies suggest that there is an ~50-66% 5-year survival for a stage 1 adenocarcinoma, so Mr. Keller's prognosis remains guarded. (Cui et al, *Postoperative survival of pulmonary invasive mucinous adenocarcinoma versus non-mucinous invasive adenocarcinoma.* 2023. BMC Pulmonary. 23:1427)

## Fees

My current fees are $700/hr. for case review, $2,100 for scheduled deposition (max. 3h), and $8,000 per diem for testimony in court.

*Richard L. Kradin, M.D.* (signed electronically)

Richard L. Kradin, M.D.
Associate Professor Emeritus of Medicine and Pathology
Harvard Medical School

RK:sc