**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SCOTT K. KELLER,**<br><br>**Plaintiff,**<br><br>**-v.-**<br><br>**EXXONMOBIL OIL CORPORATION**<br><br>**Defendant.** | **Case No.: 1:23-cv-01528**<br><br>**Admiralty**<br><br>**Jury Trial Demanded** |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO EXXONMOBIL OIL CORPORATION'S MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF PLAINTIFF'S EXPERT DR. RICHARD KRADIN, M.D.**

## TABLE OF CONTENTS

I. INTRODUCTION ........................................ 1

II. DR. KRADIN'S QUALIFICATIONS AND OPINIONS ........................................ 2

III. ARGUMENT AND AUTHORITIES ........................................ 3

A. Legal Standards for the Admissibility of Expert Testimony. ........................................ 3

B. Specific quantifications of exposure are unnecessary in order to determine that asbestos exposure causes disease. ........................................ 5

C. Dr. Kradin may consider the lay opinions of Mr. Keller and his coworkers. ......... 6

D. The opinions and testimony of Dr. Kradin are sufficiently reliable under *Daubert*. ........................................ 8

1. Dr. Kradin's opinions and testimony are sufficiently based on the facts and information in this case. ........................................ 11

2. Dr. Kradin's opinions are based on a reliable methodology. .................... 13

3. It is not necessary for Dr. Kradin to quantify the levels of asbestos to which Mr. Keller was exposed to satisfy proximate causation. ............ 13

4. Dr. Kradin will opine that Mr. Keller's lung cancer was caused by his cumulative exposures to asbestos. ........................................ 15

E. Dr. Kradin's opinions are not unreliable because he did not consider Mr. Keller's alleged radon exposure. ........................................ 15

F. The authorities relied on by Exxon are distinguishable. ........................................ 16

IV. CONCLUSION ........................................ 17

## TABLE OF AUTHORITIES

**Cases**

*American Dredging Co. v. Miller*,
510 U.S. 443 (1994) ........ 8

*Brogan v. United New York Sandy Hook Pilots' Ass'n*,
213 F. Supp. 2d 432 (D.N.J. 2002) ........ 9

*Colon ex rel. Molina v. BIC USA, Inc.*,
199 F. Supp. 2d 53 (S.D.N.Y. 2001) ........ 4

*Consol. Rail Corporation v. Gottshall*,
512 U.S. 532 (1994) ........ 9

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). ........ 1, 3, 4

*Estate of Carey v. Hy-Temp Mfg., Inc.*,
929 F2d 1229 (7th Cir. 1991) ........ 12

*Evans v. United Arab Shipping Co. S.A.G.*,
4 F.3d 207 (3d Cir. 1993) ........ 9

*Ferguson v. Moore-McCormack Lines, Inc.*,
352 U.S. 521 (1957) ........ 9

*Gibson v. W.C.A.B.*,
861 A.2d 938 (Pa. 2004) ........ 7

*Harahan v. AC & S, Inc.*,
816 A.2d 296 (Pa. Super. 2003) ........ 7

*Heller v. Shaw Indus., Inc.*,
167 F.3d 146 (3d Cir. 1999) ........ 3

*Heller v. Shaw Industries., Inc.*,
167 F.3d 146 (3d Cir. 1999) ........ 14

*In re Heckmann Corp. Sec. Litig.*
No. 10-378-LPS-MPT, 2013 WL 2456104 (D. Del. June 6, 2013) ........ 4

*In re Linerboard Antitrust Litig.*,
203 F.R.D. 197 (E.D. Pa. 2001) ........ 4

*In re Paoli R.R. Yard PCB Litig.*,
35 F.3d 717 ........ 4

*Jackson v. A-C- Product Liability Trust*,
622 F.Supp. 2d 641 (W.D. Ohio 2009) ........................................................................10, 11

*Jahn v. Equine Services, PSC*,
233 F.3d 382 (6th Cir. 2000) ............................................................................................ 4

*Lees v. Carthage College*,
714 F.3d 516 (7th Cir. 2013) ............................................................................................ 4

*Maiz v. Virani*,
253 F.3d 641 (11th Cir. 2001). .......................................................................................... 4

*Melini v. 71st Lexington Corp*.,
No. 07 Civ. 701, 2009 U.S. Dist. LEXIS 16666 (S.D.N.Y. Feb. 13, 2009) ........................ 4

*Miller v. American President Lines*,
989 F.2d 1450 (6th Cir. 1993), overruled on other grounds, *Atlantic Sounding Co. v. Townsend*, 557 U.S. 404, 129 S. Ct. 2561 (2009) ..................................................10, 11

*Norfolk Southern Railway Co. v. Sorrell*,
549 U.S. 158 (2007) ............................................................................................................ 9

*Owens-Corning Fiberglas Corp. v. Garrett*,
682 A.2d 1143 (Md. 1996) .................................................................................................. 8

*Rogers v. Missouri Pacific R. Co*.,
352 U.S. 500 (1957) ............................................................................................... 9, 10, 13

*Skidmore v. Precision Printing & Packaging, Inc*.,
188 F.3d 606 (5th Cir. 1999) ............................................................................................... 4

*Sloan v. United States of America*,
603 F.Supp. 2d 798 (E.D. Pa. 2009) ..................................................................................... 9

*Torrejon v. Mobil Oil Co*.,
876 So. 2d 877 (La. Ct. App. 2004) .............................................................................. 9, 10

*U.S. v. Phung*,
127 Fed.Appx. 598 (3rd Cir. 2005) ...................................................................................... 4

*Westberry v. Gislaved Gummi AB*,
178 F.3d 257 (4th Cir. 1999) .............................................................................................. 14

*Williams v. CSX Transp., Inc.,*
626 S.E.2d 716 (N.C. App. 2006) .......................................................................................... 7

*Yates v. Ford Motor Co.*,
113 F. Supp. 3d 841 (E.D.N.C. 2015) *reconsideration denied*, No. 5:12-CV-752-FL, 2015 WL 6758983 (E.D.N.C. Nov. 5, 2015) .......... 14

**Statutes**

45 U.S.C. §§ 51 et seq. .......... 8

46 U.S.C. § 30104 .......... 8

**Rules**

Fed. R. Civ. P. 702 .......... 4

Fed. R. Evid. 602 .......... 7

Fed. R. Evid. 702 .......... 4

Fed. R. Evid. 703 .......... 11

## I. INTRODUCTION

Plaintiff, by and through his undersigned counsel of record, hereby submits this Memorandum of Law in Opposition to ExxonMobil Oil Corporation's ("Defendant" or "Exxon") Motion to Exclude the Opinions and Testimony of Plaintiff's Expert Dr. Richard Kradin, M.D. ("Dr. Kradin"). Exxon's Motion seeks to preclude Dr. Kradin from offering opinions and testimony regarding specific causation because it (1) is not based on established facts and data, (2) is not supported by a reliable methodology, and (3) does not consider any potential exposure to radon. Exxon further claims that Dr. Kradin's methodology is unreliable because his opinions are based on lay witness testimony. Finally, Exxon seeks to exclude opinions offered by Dr. Kradin "based on the purported 'every exposure' or 'cumulative exposure' theory.

Although styled as an attack on methodology, Exxon's Motion merely attacks the conclusions of Dr. Kradin. Differing opinions concerning the conclusions to be drawn from the scientific literature do not provide a basis for exclusion of expert testimony. Dr. Kradin reaches his opinions on specific causation using a generally accepted and peer-reviewed methodology. During trial in this matter, Dr. Kradin will offer evidence that there is a dose-response relationship between exposure to asbestos and disease – meaning that the greater an individual's cumulative lifetime occupational exposure to asbestos, the greater the chance of developing an asbestos-related disease; and that Mr. Keller's lung cancer was caused by his cumulative exposure to asbestos. Not only does Exxon fail to challenge Dr. Kradin's expert qualifications, but Exxon also wholly fails to challenge the science underlying Dr. Kradin's opinions. For the reasons set forth more fully below, Plaintiff respectfully requests that this Court deny Exxon's Motion (Dkt. No. 28) as to Dr. Kradin in its entirety.

## II. DR. KRADIN'S QUALIFICATIONS AND OPINIONS

Defendants do not directly challenge Dr. Kradin's qualifications, and for good reason. Dr. Kradin is a pulmonologist and pathologist licensed to practice in Massachusetts and Florida. *See* Curriculum Vitae and Bibliography of Richard Kradin, M.D., attached as Exhibit A to the Declaration of Meredith K. Clark in support of Plaintiff's Response in Opposition to ExxonMobil Oil Corporation's Motion to Exclude the Opinions and Testimony of Plaintiff's Expert Dr. Richard Kradin, M.D. ("Clark Decl."). He has specialized in pulmonary disease for over 38 years and is board certified in Internal Medicine, Anatomic Pathology, and Pulmonary Medicine with areas of sub-specialization that include pulmonary pathology. *Id.* Dr. Kradin is an Associate Professor Emeritus of Medicine and Pathology at Harvard Medical School. *Id.* In addition to his medical degree, he has an advanced degree in chemical physics and has studied epidemiology at the London School of Hygiene. *Id.*

Since the 1980s, Dr. Kradin has had a special interest in the clinical features and pathology of asbestos-related diseases. *Id.* He did direct postgraduate work on asbestos-related diseases at Harvard Medical School. *Id.* He was also the Director of a yearly seminar on asbestos-related pulmonary disease and co-director of a yearly seminar on thoracic pathology, both through the Harvard Medical School. *Id.* Dr. Kradin has authored over 200 articles, including those on asbestos-related diseases. *Id.* He has published two textbooks of pathology, has researched the immunological defenses of the lung to soluble and particulate agents, and has conducted National Institutes of Health-sponsored clinical trials regarding the treatment of lung and other cancers. *Id.*

Since the 1980's, Dr. Kradin has frequently testified in court as an expert on asbestos-related diseases, including personal injury trials in the States of Alabama, California, Florida, Louisiana, Maryland, Mississippi, Ohio, Pennsylvania, South Carolina, Texas, Washington, as well as others. *See* Richard Kradin, M.D., Deposition & Trial Testimony List, attached as Exhibit B to

the Clark Decl. Dr. Kradin's qualifications are more fully described in his Curriculum Vitae. *See* Clark Decl., Exhibit A.

Based on Dr. Kradin's review of Mr. Keller's medical records and work history in this matter, Dr. Kradin has to a reasonable degree of medical certainty found that Mr. Keller's stage IA pulmonary adenocarcinoma, mucinous type, was caused by the combined effects of his cumulative exposures to asbestos while serving in the Merchant Marines. *See* Richard Kradin, M.D. Report, dated 1/4/2024, at p. 5, attached as Exhibit C to the Clark Decl. Dr. Kradin further opined that he cannot exclude a contribution from second-hand smoke while living in his parents' house and while serving on vessels. *Id.*

## III. ARGUMENT AND AUTHORITIES

### A. Legal Standards for the Admissibility of Expert Testimony.

Under *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 592-93 (1993), a witness qualified as an expert may testify if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." *Heller v. Shaw Indus., Inc.*, 167 F.3d 146 (3d Cir. 1999). In reliance on this language "and the liberal thrust of the Federal Rules of Evidence, the Supreme Court held in *Daubert* that expert testimony need be based only on a reliable and scientifically valid methodology that fits with the facts of a case." *Id.* at 152. To this end, the Supreme Court listed four factors to guide a district court in its preliminary assessment of these requirements - testability, peer-review and publication, potential rate of error, and acceptance in the medical community - but cautioned that these are guideposts and not required factors in each case. *Daubert*, 509 U.S. at 593-94 & n.12. The Court made clear that its listing of these factors should not obscure the fact that the district court's gatekeeper role is a flexible one, and that the factors are simply useful signposts, not dispositive hurdles that a party must overcome in order to have expert testimony admitted. *Id.*

It is well established that the trial court's gatekeeper role under *Daubert* "is not intended to replace the adversary system." *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 75 (S.D.N.Y. 2001); *accord Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001). Rather, as the Court specifically recognized in *Daubert*, "cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" are the ordinary means to attack an opposing expert. *Daubert*, 509 U.S. at 596. An expert's testimony can be excluded altogether only if it "amount[s] to the sort of 'junk science' *Daubert* blocks." *Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 618 (5th Cir. 1999); *see also In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 217 & n.13 (E.D. Pa. 2001). If there are good grounds for an expert's conclusion, it should be admitted even if the judge believes that there are some flaws in the scientist's methods. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 n.8. It is thus not surprising that a review of the case law after *Daubert* shows that "the rejection of expert testimony is the exception rather than the rule." *Melini v. 71st Lexington Corp.*, No. 07 Civ. 701, 2009 U.S. Dist. LEXIS 16666, at *12-13 (S.D.N.Y. Feb. 13, 2009) (quoting Fed. R. Civ. P. 702 advisory committee's note).

It is important to note that the grounds for an expert's opinion do not have to be perfect to be admissible. *See, e.g.*, *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 744 (3rd Cir. 1994). Instead,

> the grounds for the expert's opinion merely have to be good . . . The judge might think that there are good grounds for an expert's conclusion even if the judge thinks that there are better grounds for some alternative conclusion, and *even if the judge thinks that a scientist's methodology has some flaws such that if they had been corrected, the scientist would have reached a different result.*

*Id.* at 744 (emphasis added); *see also Lees v. Carthage College*, 714 F.3d 516, 524-25 (7th Cir. 2013) (Federal Rule of Evidence 702 does not condition the admissibility on a complete and flaw-free set of data); *U.S. v. Phung*, 127 Fed. Appx. 594, 598 (3rd Cir. 2005) ("*Daubert* does not require a district court to look at whether a proposed expert could have performed his or her analysis in a better manner."); *Jahn v. Equine Services, PSC*, 233 F.3d 382, 393 (6th Cir. 2000) (cross-

examination, the presentation of contrary evidence, and careful instruction on the burden of proof are the most appropriate means of challenging "shaky but admissible evidence").

**B. Specific quantifications of exposure are unnecessary in order to determine that asbestos exposure causes disease.**

The association between lung cancer and asbestos exposure has long been known. *See*, *e.g.*, W.C. Hueper, Occupational Tumors and Allied Diseases, 1942 at 405, attached hereto as Exhibit D to the Clark Decl. Specifically, the relationship between exposure to asbestos and cancer of the lung amongst merchant marines is supported by the medical and scientific literature. *See*, *e.g.*, Rafnsson, V., et.al. in "Mortality and Cancer Incidence Among Engineers and Machinists in Iceland," Scandinavian Journal of Work Environmental Health, 1988; 14(3):197-200 ("Significantly increased standardized mortality ratios were determined for cancer of the trachea, bronchus, and lung for the entire cohort."), attached hereto as Exhibit E to the Clark Decl.

The *Helsinki Criteria for Diagnosis and Attribution* ("Helsinki Criteria"), published by a variety of nineteen participants from around the world from numerous medical fields, confirms this position. *See* Scand. J., *Asbestos, asbestosis, and cancer: the Helsinki criteria for diagnosis and attribution,* Work Environ Health 1997 Aug. 23 (4) 311-16, attached hereto as Exhibit F. In January of 1997, a group of leading experts met in Helsinki, Finland "to discuss disorders of the lung and pleura in association with asbestos and to agree upon state-of-the-art criteria for their diagnosis and attribution with respect to asbestos." *Id.* These experts included pathologists, radiologists, occupational and pulmonary physicians, epidemiologists, toxicologists, industrial hygienists, and clinical and laboratory scientists specializing in tissue fiber analysis. Collectively, the group "published over 1000 articles on asbestos and associated disorders." In rendering criteria on the attribution of asbestos-related lung cancer, the Consensus Panel considered the following generally accepted concepts:

> All 4 major histological types (squamous, adeno-, large-cell and small-cell carcinoma) can be related to asbestos.
>
> . . .
>
> The relative risk of lung cancer is estimated to increase 0.5-4% for each fiber per cubic centimeter per year (fiber-years) of **cumulative exposure**. With the use of the upper boundary of this range, a **cumulative exposure** of 25 fiber-years is estimated to increase the risk of lung cancer 2-fold.
>
> . . .
>
> [A]ttribution of causation requires reasonable medical certainty on a probability basis that the agent (asbestos) has caused or contributed materially to the disease. The likelihood that asbestos exposure has made a substantial contribution increases when the exposure increases. **Cumulative exposure**, on a probability basis, should thus be considered the main criterion for the attribution of a substantial contribution by asbestos to lung cancer risk.

*See id*. at 313-14.

Relying on these medical facts, the Consensus Panel concluded that "significant occupational exposure history with low fiber burdens (e.g. Long exposure to chrysotile and long lag-time between the end of exposure and mineralogical analysis)" should be considered for the purpose of attribution. *Id.* at 314. Significantly, the Helsinki Criteria <u>does not require a quantitative estimate of a patient's asbestos "dose"</u> exceeding some undefined level to attribute lung cancer to a given asbestos exposure. For a doctor to conclude that lung cancer is asbestos related, there needs to be evidence that the patient breathed asbestos fibers in an occupational, para-occupational, domestic, or similar setting. There is no medical or scientific requirement that quantification of asbestos exposure must occur in order to opine that exposure to asbestos was a cause of cancer in a patient.

### C. Dr. Kradin may consider the lay opinions of Mr. Keller and his coworkers.

Exxon's motion is clearly overbroad and intended to create restrictions under Rules 602 and 701 of the Federal Rules of Evidence that simply do not exist. Mr. Keller's coworkers will be

called by video recorded deposition to discuss their observations aboard the vessels upon which they served concurrently with Mr. Keller. Exxon had ample opportunity to cross-examine the witnesses to understand the basis for their beliefs and may equally present such testimony to the jury. Witnesses can testify about personal observations from which the jury can draw the inference of asbestos content. A blanket preclusion of this type of testimony is improper.

Rule 602 provides: "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." Fed. R. Evid. 602 (emphasis added). Testimony from a lay witness based on that witness's personal and actual knowledge that certain products contained asbestos established by the lay witness's experience as a merchant marine working with or near asbestos and his familiarity with the substance is admissible. Furthermore, even if the witness does not have personal knowledge of the asbestos content of a product, evidence to prove personal knowledge may be presented in another form.

Moreover, asbestos cases in courts across the country have admitted coworker lay opinion testimony as evidence of exposure to asbestos from specific products or work sites. *See, e.g. Williams v. CSX Transp., Inc.,* 626 S.E.2d 716, 726 (N.C. App. 2006) (holding lay testimony by the employee's coworkers "that they regularly worked with asbestos, which was brittle and frequently crumbled, creating dust" was "rationally based on these lay witnesses' perception" and was thus admissible); *Gibson v. W.C.A.B*., 861 A.2d 938, 947 (Pa. 2004) (citing with approval *Harahan v. AC & S, Inc*., 816 A.2d 296 (Pa. Super. 2003) ("[t]he presence of asbestos in the workplace was established by the lay opinion testimony of two co-workers. One testified that sealant containing asbestos went on as a clear liquid but created dust when it dried. … He further testified as to the product's regularity of use, the frequency of inhalation, the lack of respiratory

protection, and thus credibly established the presence of asbestos in the workplace through personal knowledge.") (emphasis in original); *Owens-Corning Fiberglas Corp. v. Garrett*, 682 A.2d 1143, 1156-57 (Md. 1996) (holding coworkers' general testimony that they used a variety of asbestos-containing products at the plant, including Kaylo, satisfied the "frequency-regularity-proximity test").

Testimony from a lay witness based on that witness' personal and actual knowledge that asbestos abounded on Exxon's vessels is admissible. In this case, the lay witness testimony from Mr. Keller's coworkers makes clear that he was exposed to asbestos on Exxon's vessels.[1]

### D. The opinions and testimony of Dr. Kradin are sufficiently reliable under *Daubert*.

Exxon argues that Dr. Kradin's opinions fail to pass muster under *Daubert* because his opinion is not based on established facts and data pertaining to Mr. Keller's asbestos exposure aboard Exxon's vessels. Plaintiff asserted Jones Act claims against Exxon as a shipowner-employer. Codified in 46 U.S.C. § 30104, the Jones Act provides seamen a right of action in negligence against a shipowner-employer for injuries obtained in the course of employment by extending seamen the same statutory recovery for personal injury afforded to railroad workers under the Federal Employer's Liability Act ("FELA"), 45 U.S.C. §§ 51 et seq. *See American Dredging Co. v. Miller*, 510 U.S. 443, 456 (1994). The Jones Act provides in relevant part:

> A seaman injured in the course of employment or, if the seaman dies from the injury, the personal representative of the seaman may elect to bring a civil action at law, with the right of trial by jury, against the employer. Laws of the United States regulating recovery for personal injury to, or death of, a railway employee apply to an action under this section.

46 U.S.C. § 30104.

[1] For the sake of brevity, Plaintiff fully incorporates by reference.Plaintiff's Response in Opposition to Defendant ExxonMobil Oil Corporation's Motion for Summary Judgment, and Plaintiff's Local Rule 26.1 Counter-Statement of Material Facts filed concurrently herewith.

It is well-established that the burden of proof to establish causation in Jones Act cases is "relaxed" or "featherweight" – that is, liability attaches if the defendant's negligence played any part, no matter how slight, in causing the plaintiff's injury. *See Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 506 (1957) ("the test of a jury case is simply whether the proofs justify with reason the conclusion **employer negligence played any part, even the slightest**, in producing the injury or death for which damages are sought") (emphasis added); *see also Consol. Rail Corporation v. Gottshall*, 512 U.S. 532, 543 (1994) (acknowledging that "a relaxed causation standard applies under FELA"); *Norfolk Southern Railway Co. v. Sorrell*, 549 U.S. 158, 178, 127 S.Ct. 799, 812 (U.S. 2007) (Ginsburg, J., concurring) ("Today's opinion leaves in place precedent solidly establishing that the causation standard in FELA actions is more 'relaxed' than in tort litigation generally."); *Ferguson v. Moore-McCormack Lines, Inc*., 352 U.S. 521, 523, 1 L. Ed. 2d 511, 77 S. Ct. 457 (1957) (applying FELA's relaxed standard of causation to Jones Act cases); *Evans v. United Arab Shipping Co. S.A.G.*, 4 F.3d 207, 219, (3d Cir. 1993) (describing the plaintiff's standard of causation in Jones Act cases as "featherweight"); *Sloan v. United States of America*, 603 F.Supp. 2d 798, 805 (E.D. Pa. 2009) (holding the "featherweight causation standard [] allows a seaman to survive summary judgment by presenting even the slightest proof of causation.") (quoting *Brogan v. United New York Sandy Hook Pilots' Ass'n*, 213 F. Supp. 2d 432, 437 (D.N.J. 2002)).

In the context of asbestos litigation, the "featherweight" standard of causation is similarly applicable. *See Torrejon v. Mobil Oil Co*., 876 So. 2d 877, 891 (La. Ct. App. 2004). In *Torrejon*, the Louisiana Fourth Circuit Court of Appeals provided a helpful two-step analysis outlining the differences between asbestos exposure claims under the Jones Act versus typical asbestos product liability claims. First, in a products liability case, the plaintiff is required to prove exposure to a

particular manufacturer's products; whereas, in a Jones Act case, the plaintiff is only required to prove general exposure to asbestos aboard the employer's vessel. *Id.* Second, in a products liability case, the plaintiff is required to prove substantial causation; whereas, in a Jones Act case, the plaintiff is only required to prove slight causation. *Id.* Similarly, in *Miller v. American President Lines*, the Sixth Circuit Court of Appeals rejected the "frequency, regularity and proximity" test as the proper standard of causation under the Jones Act. *Miller v. American President Lines*, 989 F.2d 1450, 1463 (6th Cir. 1993), overruled on other grounds, *Atlantic Sounding Co. v. Townsend*, 557 U.S. 404, 129 S. Ct. 2561 (2009).

Accordingly, an asbestos plaintiff need only provide evidence, whether direct or circumstantial, to create a "reasonable inference" that the plaintiff's exposure to asbestos aboard a defendant's vessel was "a" cause of the plaintiff's injury. *See Torrejon*, 876 So.2d at 893 (noting that a reasonable inference is "one that makes the existence of the inferred fact more probable than not[.]") (internal citations omitted). Indeed, the fact that circumstantial evidence is sufficient to establish causation under the Jones Act is well-settled. In *Rogers*, the Supreme Court held that the burden of the employee is met, and the obligation of the employer to pay damages arises, "when there is proof**, even though entirely circumstantial**, from which the jury may with reason make that inference." *See* 352 U.S. at 508 (emphasis added). In so holding, the Court noted "[c]ircumstantial evidence is not only sufficient but may also be more certain, satisfying and persuasive than direct evidence." *Id.* at 508 fn. 17 (internal citations omitted); *see also Jackson v. A-C- Product Liability Trust*, 622 F.Supp. 2d 641, 645 (W.D. Ohio 2009).

Further, the *Jackson* Court specifically addressed the sort of exposure evidence sufficient to support the jury's verdict. In citing *Miller v. American President Lines*, 989 F.2d 1450 (6th Cir.

Ohio 1993), the *Jackson* Court stated that the following would represent sufficient exposure evidence:

> evidence concerning the presence of asbestos dust throughout the ships on which [the injured party] lived and worked for prolonged periods, from the engine rooms where he labored as a wiper, reefer and electrician to the crew's living quarters. Asbestos-lined pipes ran inches from crew members' bunks and blanketed them with dust that vibrated free overnight during rough weather.

*Jackson*, 622 F. Supp. 2d at 645. This is precisely the type of evidence Mr. Keller's coworkers in the instant matter will provide. As the *Jackson* decision noted, "no testimony was offered from coworkers" in that case. *Id.* Here, three of Mr. Keller's coworkers, as well as Mr. Keller himself, offered deposition testimony.

**1. Dr. Kradin's opinions and testimony are sufficiently based on the facts and information in this case.**

Rule 703 of the Federal Rules of Evidence states, in pertinent part, that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703. Further, experts may draw opinions or inferences from inadmissible sources such as hearsay:

> If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted.

Fed. R. Evid. 703.

Hearsay and/or other inadmissible evidence relied on by an expert can be disclosed to the jury where the court determines that the probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect. Fed. R. Evid. 703. Moreover, the use of hypothetical questions is not only permissible but will provide Plaintiff's experts with a firm basis on which to opine. *See e.g. Jackson v. A-C Prod. Liab. Trust*, 622 F. Supp. 2d at 646 ("Clearly it is proper for a party to pose hypothetical questions to experts. However, hypotheticals with

assumed facts must have some support in the trial records.”). “[E]xpert witnesses may be competent to give opinions based upon hypothetical facts even though a foundation that the expert has personal knowledge of those facts has not been laid.” *See, e.g., Estate of Carey v. Hy-Temp Mfg., Inc.* 929 F2d 1229, 1235 n.2 (7th Cir. 1991)).

In this case, the opinions of Dr. Kradin are supported by sufficient and specific factual foundations regarding Mr. Keller’s asbestos exposure aboard Exxon’s vessels. This includes but is not limited to, Mr. Keller’s coworkers’ evidence,[2] Mr. Keller’s testimony,[3] the NAVICs,[4] expert testimony from other witnesses pertaining to the use and release of asbestos aboard merchant vessels, medical literature,[5] and medical records, and all of the testimony and evidence introduced at trial. Here, Dr. Kradin is certainly allowed to rely on general evidence, as well as case specific evidence to form his opinions in this case. Mr. Keller had substantial exposure to asbestos while serving aboard Exxon’s vessels.[6]

In short, Defendant’s motion is a premature attempt to preclude evidence which must be developed during trial in order to determine sufficiency of the testimony through factual support and foundation. The Court should have the opportunity to evaluate the totality of the evidence, including the legal sufficiency of testimony by an expert witness. The lack of specificity of Defendant’s motion *in limine* highlights its prematurity. At trial, Defendant will have ample opportunity to vigorously cross-examine Dr. Kradin and will be able to present its own witnesses, should it have any, to testify that Plaintiffs were not exposed to asbestos-containing products and

[2] *See* Plaintiff’s Response in Opposition to the Defendant’s Motion for Summary Judgment.
[3] *Id*.
[4] *Id*.
[5] *See, e.g.,* Selikoff, I.J., et al., *Asbestotic radiological abnormalities among United States merchant marine seamen*, British J. Ind. Med. 1990; 47:292-97, 294 (radiological abnormalities consistent with asbestosis found in those exposed in the engine department (42.5%) but also were found for those in the deck department (36.6%) and the steward department (28.4%)), attached as Exhibit G.
[6] *Id*.

materials. Making a determination of this issue now, given Defendant's vague and irrelevant Motion is unnecessary and improper.

**2. Dr. Kradin's opinions are based on a reliable methodology.**

His methodology for determining specific causation is founded upon occupational epidemiological studies, texts and reports, and begins with a review of medical records, pathology samples, and depositions that establish asbestos-content. Where the individual has experienced above background/ambient levels of exposure to asbestos, it is Dr. Kradin's opinion the above-background exposures, ***taken in context of the total (cumulative) exposures***, are significant and non-trivial, and are medical and scientific causes of the asbestos-related disease. As in all cases he reviews, Dr. Kradin based his opinions on a review of the plaintiff's testimony, medical records, and pathology.

**3. It is not necessary for Dr. Kradin to quantify the levels of asbestos to which Mr. Keller was exposed to satisfy proximate causation.**

According to the *Helsinki* Criteria, a mathematical quantification or dose of an individual's exposure to asbestos is not required to establish causation. *See* Exhibit F to the Clark Decl. at 313-14. Given the long latency of asbestos-related disease, coupled with the potential that a plaintiff may die of his asbestos-related injuries prior to trial, the available proof of asbestos exposure will inherently be circumstantial in nature. In fact, courts have emphasized that the "substantial contributing factor" test[7] must be interpreted and applied practically in toxic tort cases, including asbestos personal injury cases, in view of the scientific and medical reality

[7] As discussed in Plaintiff's Response in Opposition to Defendant ExxonMobil Oil Corporation's Motion for Summary Judgment, filed concurrently herewith, it is well-established that the burden of proof to establish causation under FELA, and by incorporation, the Jones Act, is "relaxed" or "featherweight"—that is, liability attaches if the defendant's negligence played any part, no matter how slight, in causing the plaintiff's injury. *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 506 (1957) ("the test of a jury case is simply whether the proofs justify with reason the conclusion **employer negligence played any part, even the slightest**, in producing the injury or death for which damages are sought") (emphasis added).

that it is impossible to prove what precise level of exposure the plaintiff experienced, what precise level of exposure will cause injury, and which specific product (or specific asbestos fibers) caused the illness.

For example, in *Westberry v. Gislaved Gummi*, a toxic tort case, the Fourth Circuit rejected the defendant's argument that the plaintiff's expert's testimony should not be admitted because the expert could not prove "the levels of exposure that are hazardous to human beings generally as well as the plaintiff's actual level of exposure." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 263 (4th Cir. 1999) (citation and internal quotation marks omitted). The court noted that:

> [O]nly rarely are humans exposed to chemicals in a manner that permits a quantitative determination of adverse outcomes. . . . Human exposure occurs most frequently in occupational settings where workers are exposed to industrial chemicals like lead or asbestos; however, even under these circumstances, it is usually difficult, if not impossible, to quantify the amount of exposure.

*Id.* at 264 (quoting Federal Judicial Center, *Reference Manual on Scientific Evidence* at 187 (1994)) (second alteration in original). The court further explained that "precise information concerning the exposure necessary to cause specific harm to humans and exact details pertaining to the plaintiff's exposure . . . is not always available, or necessary, to demonstrate that a substance is toxic to humans given substantial exposure and need not invariably provide the basis for an expert's opinion on causation." *Id.* (citing *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 157 (3d Cir. 1999) (noting "that even absent hard evidence of the level of exposure to the chemical in question, a medical expert could offer an opinion that the chemical caused plaintiff's illness")). "Accordingly, 'qualitative' evaluations of asbestos exposures may also be used to establish the appropriate levels which science has shown to be hazardous, and which plaintiff has experienced." *Yates v. Ford Motor Co.*, 113 F. Supp. 3d 841 (E.D.N.C. 2015) *reconsideration denied*, No. 5:12-CV-752-FL, 2015 WL 6758983 (E.D.N.C. Nov. 5, 2015) (citing *Westberry*, 178 F.3d at 263-64) (internal citations omitted).

In addition to the case law, this Court need only review the medical and scientific literature for attributing lung cancer to asbestos exposure developed in a non-litigation setting to reject Defendant's arguments here.

#### 4. Dr. Kradin will opine that Mr. Keller's lung cancer was caused by his cumulative exposures to asbestos.

Defendant is misguided to the extent it claims Dr. Kradin's opinions and testimony are based upon the so-called "each and every" or "no safe level" theory. Rather, the opinions and testimony of Dr. Kradin will be sufficiently based upon the medical and scientific literature as well as all of the exposure evidence adduced in Plaintiff's Response in Opposition to the Defendant's Motion for Summary Judgment. Specific causation pertaining to some theoretical, short-term exposure of "one breath" or "one fiber" or "one exposure" is not at issue here. Indeed, Plaintiff's will demonstrate that Mr. Keller's exposure to asbestos-containing products and equipment during his work aboard Exxon's maritime vessels is overwhelming and not negligible through the testimony of Mr. Keller and his co-workers.

As described previously, the medical and scientific community agrees that specific quantifications of exposure to asbestos are unnecessary for the attribution of disease, that exposure to all types of asbestos can cause disease. Thus, Dr. Kradin's opinions and testimony that Mr. Keller's lung cancer was caused by his cumulative exposures to asbestos is sufficiently based on medical and scientific literature to be reliable. *See* Exhibit F to Clark Decl.

### E. Dr. Kradin's opinions are not unreliable because he did not consider Mr. Keller's alleged radon exposure.

Dr. Kradin testified that he was not asked to opine on Mr. Keller's alleged radon exposure. *See* Exhibit H to Clark Decl., Dep. of Kradin, at 25:24-26:6. Dr. Kradin began practicing medicine at the Massachusetts General Hospital in Boston, Massachusetts during his residency in 1978. Exhibit A to Clark Decl., Kradin CV. The Massachusetts General Hospital is approximately 40

miles from the border between Massachusetts Maine. Yet, when questioned about radon-related lung cancer, Dr. Kradin testified that he's "never seen a case of lung cancer in 45 years of practice that was attributed directly to radon with any degree of confidence. . . . particularly in an individual whose radon level in his home was extremely low, which apparently was the case for the measurements done for Mr. Keller's house." Exhibit H to Clark Decl., at 26:19-27:2. He further testified that "Mr. Keller was in the Merchant Marines, [he's] not sure how much time [Mr. Keller] actually spent in his own home." *Id.* at 25:25-26:6. It was Dr. Kradin's opinion that it is difficult to attribute lung cancer to radon exposure in clinical practice. *Id.* at 36:13-15.

**F. The authorities relied on by Exxon are distinguishable.**

In *Wills v. Amerada Hess Corp.*, 378 F.3d 32 (2nd Cir. 2004), the plaintiff filed an action against the shipowner-defendant alleging her husband's exposure to benzene and polycyclic aromatic hydrocarbons ("PAHs") while working aboard the defendants' vessels. 378 F.3d at 37. The widow's complaint alleged claims for wrongful death, unseaworthiness, and maintenance and cure under general maritime law, negligence and loss of consortium under New York state law, and negligence and wrongful death under the Jones Act. *Id.* In support of her claims, the plaintiff disclosed her experts, including Jesse H. Bidanset, Ph.D., a forensic toxicologist. *Id.* The court noted that "Dr. Bidanset conceded in his deposition that he was unaware of any scientific studies that would support his contention, . . . that the 'aggressiveness' of decedent's cancer demonstrates that he was 'intensely exposed to ... carcinogenic hydrocarbons.'" *Id.* at 38. Moreover, Dr. Bidanset conceded that his "oncogene theory" of causation was controversial. *Id.* The court found that Dr. Bidanset's first report was "devoid of scientific evidence linking squamous cell carcinoma to exposure to benzene and PAHs," the toxins alleged by the plaintiff to be the cause of her husband's lung cancer. *Id.* at 38-39. Finally, the court noted that Dr. Bidanset "indicated that 'he

is not even sure whether benzene is capable of causing Decedent's [squamous cell carcinoma].'" *Id.* at 39.

The facts of *Wills* are wholly inapposite to Dr. Kradin's proffered testimony in this case. In his report, Dr. Kradin cites to multiple references not only linking asbestos exposure to lung cancer causally, but also specifically finding asbestos-related lung cancer in merchant mariners. *See* Clark Decl., Exhibit C, at 2-4. Moreover, Dr. Kradin is the author of more than 200 articles, some of which are related to asbestos and the diseases it causes. *See* Clark Decl., Exhibit A.

## IV. CONCLUSION

Throughout Defendant's brief, Defendant makes numerous accusations attacking the credibility of Dr. Kradin. That commentary is merely fodder for cross-examination, as are Defendant's attacks on the methodology Dr. Kradin employed in reaching his opinions. None of Defendant's arguments stand as sufficient basis to exclude the relevant testimony and opinions of Dr. Kradin, and Defendant's Motion should be DENIED.

Dated: June 5, 2024.

Respectfully submitted,

**MOTLEY RICE LLC**

*/s/ Meredith K. Clark*
Meredith K. Clark, Esq.
John E. Herrick, Esq., *pro hac vice*
Donald Migliori, Esq.
28 Bridgeside Blvd.
Mt. Pleasant, S.C.
(843) 216-9000
F: (843) 216-9450
mkclark@motleyrice.com
jherrick@motleyrice.com
dmigliori@motleyrice.com

Timothy A. Swafford, Esq.
JAQUES ADMIRALTY PC
30800 Telegraph Road, Suite 1850
Bingham Farms, MI 48025
Phone: (313) 961-1080

Fax:  (313) 961-5275
tswafford@jaquesadmiralty.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2024, a true and correct copy of the foregoing, Plaintiff's Response in Opposition to ExxonMobil Oil Corporation's Motion to Exclude the Opinions and Testimony of Plaintiff's Expert Dr. Arnold Brody, Ph.D., was filed with the Court and served electronically this day and is available for viewing from the Court's ECF (Electronic Case Filing) system to all counsel of record and to those registered to receive a Notice of Electronic Filing for this case.

Notice of this filing will be sent to all counsel of record via the Court's ECF system.

/s/Meredith K. Clark
Attorney for Plaintiff

Meredith K. Clark
Motley Rice LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
(843) 216-9000
(843) 216-9450 (fax)
mkclark@motleyrice.com