**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| SCOTT K. KELLER,<br><br>Plaintiff,<br><br>v.<br><br>EXXONMOBIL OIL CORPORATION,<br><br>Defendant. | : | Civil Action No.: 1:23-cv-01528 |

**EXXONMOBIL OIL CORPORATION'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF PLAINTIFF'S EXPERT DR. RICHARD KRADIN, M.D.**

Of Counsel and On the Brief:

Dennis E. Vega, Esq.
William T. Miedel, Esq.

TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ iii

LEGAL ARGUMENT ..............................................................................................................1

A. A Specific Quantification of Exposure *Is* Necessary to Establish That Asbestos Caused Plaintiff's Lung Cancer in This Case. ............................................................................. 1

B. The Testimony of Plaintiff and Plaintiff's Fact Witnesses is Insufficient to Support Specific Legal Causation. ........................................................................................... 5

C. The "Featherweight" Standard Plaintiff References Does Not Dispense With The Requirement That Specific Causation Must Be Established. .......................................... 7

CONCLUSION .........................................................................................................................8

## TABLE OF AUTHORITIES

### Cases


Bell v. Foster Wheeler Energy Corp.,
2016 WL 5847124 at *3, n. 3 (E.D. La. 2016) ........ 3

Doolin v. Ford Motor Co.,
2018 WL 4599712 at *17 (M.D. Fla. 2018) ........ 4

Evans v. United Arab Shipping Co.,
4 F.3d 207 (3d Cir. 1993) ........ 7

Ferguson v. Moore-McCormack Lines,
352 U.S. 521 (1957) ........ 7

Gibson v. W.C.A.B.,
861 A.2d 938 (Pa. 2004) ........ 7

Hanson v. Colgate-Palmolive Co.,
353 F. Supp.3d 1273, 1290-92 (S.D. Ga. 2018) ........ 3

Sloan v. United States,
603 F. Supp.2d 798 (E.D. Pa. 2009) ........ 8

Torrejon v. Mobil Oil Co.,
876 So.2d 877 (La. Ct. App. 2004) ........ 8

Westberry v. Gislaved Gummi SB,
178 F.3d 257 (4th Cir. 1999) ........ 4, 5

Williams v. CSX Transp., Inc.,
626 S.E.2d 716 (N.C. App. 2006) ........ 6


### Statutes


N.C. Gen.Stat. § 8C–1 ........ 6


### Rules


Federal Rule of Evidence 701 ........ 6, 7

North Carolina's Rule 701 ........ 6

Rule 702 ........ 6, 7

## LEGAL ARGUMENT

Plaintiff's reply papers fail to rebut the substantive arguments raised in ExxonMobil's Motion to Exclude the Opinions and Testimony of Plaintiff's Expert Dr. Richard Kradin, M.D. See Plaintiff's Response in Opposition to ExxonMobil Oil Corporation's Motion to Exclude the Opinions and Testimony of Plaintiff's Expert Dr. Richard Kradin, M.D. dated June 5, 2025 (Doc. 54) ("Plaintiff Opp."). First, Plaintiff still fails to establish how his expert Richard L. Kradin, M.D. ("Dr. Kradin") used a scientifically reliable method to opine about specific causation in this case (i.e., whether Plaintiff Scott Keller sustained significant exposure to asbestos from his work aboard Mobil Oil vessels to have cause Mr. Keller's lung cancer in this case). Id. at pp. 5-6, 13-15. Second, Plaintiff has not established that Plaintiff's and his co-workers' lay testimony was (1) admissible or (2) the type of evidence an expert in Dr. Kradin's field would use as the sole basis for a specific causation opinion. Id. at pp. 6-8, 11-13.

### A. A Specific Quantification of Exposure *Is* Necessary to Establish That Asbestos Caused Plaintiff's Lung Cancer in This Case.

Throughout his opposition papers, Plaintiff continually conflates general causation (whether asbestos is capable of causing lung cancer) with specific causation (whether Plaintiff Scott Keller sustained significant exposure to asbestos from his work aboard Mobil Oil vessels to have cause Mr. Keller's lung cancer in this case). See Plaintiff Opp. at pp. 5-6, 13. Most notably, both Plaintiff and Dr. Kradin would have this Court look to those parts of the Helsinki Criteria that posit a link between asbestos exposure and lung cancer, while pointedly ignoring the medical markers that the Helsinki Criteria require for determining whether a specific individual's lung cancer – such as Plaintiff's in this case – can be attributed to asbestos exposure. Id.

Under the Helsinki Criteria, "[t]he clinical diagnosis of asbestos-related disease is based on a detailed interview of the patient and occupational data on asbestos exposure and appropriate

latency, signs and symptoms, **radiological and lung physiology findings, and selected cytological, histological and other laboratory findings**." See Scand. J., *Asbestos, asbestosis, and cancer: the Helsinki criteria for diagnosis and attribution,* Work Environ Health 1997 Aug. 23 (4) 311-16 (attached as Exhibit F to Plaintiff Opp.) at p. 311 (emphasis supplied). Dr. Douglas W. Henderson, a pathologist who was also the Chair of the conference that led to the publication of the referenced Helsinki Criteria (id.), summarized the Helsinki Criteria as follows:

(1) "the presence of asbestosis" (Plaintiff did not have asbestosis as confirmed by Dr. Kradin (see Local Rule 56.1 Statement of Undisputed Material Facts in Support of Defendant ExxonMobil Oil Corporation's Motion for Summary Judgment ("SOF") (Doc. 32) at ¶¶ 125-128, Exhibit 56) or;

(2) "a count of 5,000 to 15,000 asbestos bodies or more per gram of lung tissue" (Plaintiff's lung tissue samples contained no asbestos bodies as confirmed by Dr. Kradin (SOF at ¶¶ 123 & 126, Exhibits 56-57)) or;

(3) "[e]stimated cumulative exposure to asbestos of 25 fibre-years or more" (Plaintiff had less than 1 fiber-cc years as confirmed by Alan Leibowitz and Dr. Pierce (SOF at ¶ 138, Exhibits 44 & 60)) or;

(4) "an occupational history" of "5-10 years of moderate exposure (e.g., construction or shipbuilding)" (Plaintiff's asbestos exposure as a seafarer was very light (less than 1 fiber-cc years and three-years aboard Mobil Oil steam tankers with half of that time being on paid time-off), and he was not involved in construction or shipbuilding (SOF at ¶¶ 36-37 (including Table 1 & Table 2), 43, 113, 138, Exhibits 4, 9, 11, 44 & 60)); and

(5) a minimum 10-year latency period.

Henderson, D., *After Helsinki: A multidisciplinary review of the relationship between asbestos exposure and lung cancer, with emphasis on studies published during 1197-2004*, Pathology (December 2004) 36(6), 517-550 ("After Helsinki") (annexed hereto as Exhibit A) at pp. 532-33. In his report in this case, Dr. Kradin admits that based on his review of Plaintiff's medical records "[t]here are no pleural plaques" (i.e., no indices of asbestos) and "[n]o asbestos bodies are present." See ExxonMobil Oil Corporation's Memorandum of Law in Support of Its Motion to Exclude the Opinions and Testimony of Plaintiff's Expert Dr. Richard Kradin, M.D. at Exhibit A (Doc. 29-1) ("Kradin Report"), pp. 4-5; see also id. at Exhibit C (Doc. 29-3) ("Kradin Dep."), pp. 45-49.

Dr. Kradin cites to Dr. Henderson, presumably acknowledging him as an authority, for the opinion that "the relative risk/odd ratio of developing lung cancer following asbestos exposure double with exposures of ~25 fiber-cc years."[1] Kradin Report at p. 2. But therein lies the problem for Dr. Kradin. At no point before or during the pendency of this case has anyone calculated Plaintiff's asbestos exposure at, or above, 25 fiber-cc-years. SOF at ¶¶ 112-13, 115, 138, Exhibits 9, 44, 55-56, 60. Simply stated, even if this Court uses Plaintiff's preferred document, the relaxed Helsinki Criteria, Plaintiff cannot escape the inevitable conclusion – he cannot meet his burden of proving specific causation. See Hanson v. Colgate-Palmolive Co., 353 F. Supp.3d 1273, 1290-92 (S.D. Ga. 2018); Bell v. Foster Wheeler Energy Corp., 2016 WL 5847124 at *3, n. 3 (E.D. La. 2016).

---

[1] There is ample support that the relaxed Helsinki Criteria of ~25 fiber-cc-years doubling rate is very low. As noted in SOF ¶ 137, the published literature suggests that "the threshold for increased risk of lung cancer appears to be somewhere in the range of 25-100f/cc years." Ex. 58 to Vega Decl., K. Browne, A threshold for asbestos related lung cancer, Brit. J. of Indus. Med., 558 (1986). Recently, researchers have found that meta-analyses have shown that no adverse effects have been observed for exposures to chrysotile asbestos as high as 97–175 f/cc years for lung cancer. E.M. Beckett, et al., An Updated Evaluation of Reported No-Observed Adverse Effect Levels for Chrysotile, Amosite, and Crocidolite Asbestos for Lung Cancer and Mesothelioma, Crit. Rev. in Tox. Dec. 21, 2023.

Here, Dr. Kradin admitted that after reviewing Plaintiff's PFTs, radiology reports and pathology slides, Dr. Kradin saw no medical evidence of the following medical markers for an asbestos-related injury: (i) asbestosis, (ii) interstitial fibrosis, (iii) calcified pleural plaques, (iv) non-calcified pleural plaques, (v) pleural thickening, (vi) increased reticular nodule densities throughout the lungs, (vii) asbestos bodies, or (viii) diffuse scarring of the pleura. Kradin Dep. at pp. 45:12 to 49:25. Plaintiff's counsel has admitted this fact. See Plaintiff's Local Rule 56.1 Counter Statement of Material Facts in Opposition to Defendant ExxonMobil Oil Corporation's Motion for Summary Judgment ("Plaintiff SOF") at ¶ 126. With no medical evidence of an asbestos-related injury, no quantification of asbestos exposure, and in light of the uncontroverted radon exposure in this case, Dr. Kradin's opinion that "Mr. Keller's lung cancer was caused by his cumulative exposure to asbestos while serving in the Merchant Marines" must be precluded. As another Federal District Court held:

> [Dr.] Kradin reaches his opinion as to specific causation without: 1) making any attempt to analyze the Decedent's specific dose of asbestos and the degree to which it increased his risk of developing mesothelioma, 2) identifying or discussing the particular form of the Decedent's mesothelioma and its connection to asbestos exposure, or 3) adequately considering the contribution of the Decedent's therapeutic radiation and explaining why it was likely not the sole cause of his mesothelioma. In light of the foregoing, the Court concludes that "'there is simply too great an analytical gap'" between the data presented and [Dr.] Kradin's causation opinion.

Doolin v. Ford Motor Co., 2018 WL 4599712 at *17 (M.D. Fla. 2018).

Plaintiff goes so far as to ask this Court to dispense with a quantitative analysis of Plaintiff's alleged asbestos exposure in this case. Plaintiff Opp. at pp. 13-15. However, in the case that Plaintiff relies upon for this proposition, Westberry v. Gislaved Gummi SB, 178 F.3d 257 (4th Cir. 1999), the plaintiff himself testified that his "duties brought him into contact with high concentrations of airborne talc." 178 F.3d at 260, 264. Additionally, there was a "temporal

relationship" of causation, since plaintiff established that his sinus disease began shortly after he started working with talc. Id. at 265. Neither Plaintiff nor any of Plaintiff's fact witnesses testified that they observed or otherwise experienced high concentrations of asbestos dust. SOF at ¶¶ 13, 26-24, 45-48, Exhibits 4, 12-14.

### B. The Testimony of Plaintiff and Plaintiff's Fact Witnesses is Insufficient to Support Specific Legal Causation.

Plaintiff's maritime expert and certified industrial hygienist in this case admitted that one cannot tell whether a product or material contains asbestos simply through visual observation. See SOF ¶ 88 at Exhibit 9, 99:2-99:5 (Plaintiff's Expert Troy Corbin, CIH, CSP (Doc. 34)). ExxonMobil's industrial hygiene expert, Alan Leibowitz, CIH, also demonstrated scholarly and agency support for this fact:

> On-site assessment of visual appearance or texture, without use of instrumentation, cannot establish, to any reasonable degree of scientific certainty, that the material does or does not contain asbestos. The only definitive way to determine if asbestos is present is to take a sample and have it analyzed in an accredited laboratory. This is noted in several references regarding the identification of asbestos. The U. S. Consumer Product Safety Commission (CPSC) and the EPA state that "*You can't tell whether a material contains asbestos simply by looking at it, unless it is labeled*."

SOF at Exhibit 45, p. 25 (emphasis in original) (citing to Asakura H, Nakagawa K, Grouping by Visual Appearance of Construction and Demolition Waste for Sorting Time Reduction with the Aim of Removing Asbestos-Containing Materials (2017) Int J Waste Resource 7: 298; Plowman C, Hobson E, The identification of asbestos by x-ray diffraction (1980) American Industrial Hygiene Association Journal, 41:4, 299-304; https://www.epa.gov/asbestos/protect-your-family#identify; A Consumer's Guide to Asbestos Sacramento, CA: Contractors State License Board (2013); https://www.cpsc.gov/safety-education/safety-guides/home/asbestos-home).

As Plaintiff himself argues, "[f]or a doctor to conclude that lung cancer is asbestos related, there needs to be evidence that the patient breathed asbestos fibers." Plaintiff Opp. at p. 6 (argued in the original without citation or attribution). There is absolutely no evidence in the record to establish that Plaintiff Scott K. Keller actually breathed asbestos fibers while serving aboard any Mobil Oil vessel. SOF at ¶¶ 9, 26, 28, 30, 32, 34, 44-48, Exhibits 4, 12-14.

Plaintiff testified that he did not know whether there was asbestos-containing thermal insulation on any of the Mobil Oil vessels he sailed aboard. SOF ¶ 9, Exhibit 4 at 116:16-117:7. Plaintiff specifically testified that he did not believe any of the work that he or others performed on the Mobil Oil tankers he served aboard would have exposed him to asbestos. Id. at ¶¶ 26, 28, 30, 32, 34; see generally Exhibit 4. Of the three fact witnesses who testified on Plaintiff's behalf in this case, none recalled working in direct proximity with Plaintiff. SOF ¶¶ 44-48, Exhibits 12-14.

In support of his claim that "asbestos cases in courts across the country have admitted coworker lay opinion testimony as evidence of exposure to asbestos from specific products or work sites," Plaintiff cites to a handful of cases – none of which are applicable here. In Williams v. CSX Transp., Inc., 626 S.E.2d 716 (N.C. App. 2006), lay witness opinion testimony as to asbestos exposure was permitted under North Carolina's version of Federal Rule of Evidence 701. Id. at 726 (citing to N.C. Gen.Stat. § 8C–1, Rule 701 (2005)). Notably absent from North Carolina's Rule 701 is the Federal Rule's further requirement that the lay witness opinion is "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c) (West 2024) ("Any part of a witness' testimony that is based upon scientific, technical, or other specialized knowledge within the scope of Rule 702 is governed by the

standards of Rule 702 and the corresponding disclosure requirements of the Civil and Criminal Rules." Committee Notes on Rules – 2000 Amendment).

In Gibson v. W.C.A.B., 861 A.2d 938 (Pa. 2004), the Pennsylvania Supreme Court found that lay witness testimony did not constitute evidence of long-term exposure to asbestos. Id. at 947. The Court distinguished cases in which lay witness testimony as to asbestos content was permitted when the plaintiff also had underlying asbestosis or where the defendant conceded the presence of asbestos. Id. at 946-47. The same reasoning found in subsection c to FRE 701 was applied in Gibson:

> Where, however, a party proffers a witness expressing an opinion on matters such as the presence of asbestos in the workplace, the trial court must be rigorous in assuring that the lay witness satisfies the strictures of Rule 701. In particular, the proponent of technical lay opinion testimony must show that the testimony is based on sufficient personal experience or the specialized knowledge of the witness.

Id. at 945. Finally, in Owens-Corning Fiberglas Corp. v. Garrett, 682 A.2d 1143 (Md. 1996), the lay witness testimony as to asbestos content was permitted in part because one of the witnesses was a career asbestos insulator and documentary evidence showed the presence of asbestos-containing pipe insulation at decedent's worksite. Id. at 1156-57.

**C. The "Featherweight" Standard Plaintiff References Does Not Dispense With The Requirement That Specific Causation Must Be Established.**

None of the cases cited by Plaintiff for his proposition that a "featherweight" standard of negligence applies to Jones Act cases are applicable here. See Plaintiff Opp. at pp. 9-11. In Ferguson v. Moore-McCormack Lines, 352 U.S. 521 (1957) the Supreme Court applied a lower standard of whether "negligence played any part, even in the slightest" to motions for a directed verdict and to set aside a jury verdict. 352 U.S. at 523. In Evans v. United Arab Shipping Co., 4 F.3d 207 (3d Cir. 1993), the Third Circuit found that the District Court did not err in finding no

negligence, even when applying a "featherweight standard," to the aggravation of a preexisting injury allegedly caused by a fall from a ladder. 4 F.3d at 219. In Sloan v. United States, 603 F. Supp.2d 798 (E.D. Pa. 2009), the District Court denied summary judgment on plaintiff's negligence claim because of a whole host of precipitating acts including a broken elevator, plaintiff being splashed by a chemical, people "messing around" with equipment, and the captain's denial of plaintiff's request for medical attention. 603 F. Supp.2d at 810. Finally, in Torrejon v. Mobil Oil Co., 876 So.2d 877 (La. Ct. App. 2004), not only did the parties stipulate that decedent's mesothelioma was caused by asbestos, but the Court found negligence based on "the signature nature of mesothelioma." 876 So.2d at 880, 891-93. The Court in Torrejon essentially dispensed with any causation analysis because mesothelioma was the disease at issue in this case:

> The causal link between asbestos exposure and mesothelioma contraction has been demonstrated to such a high degree of probability, while at the same time few if any other possible causes have been identified, that a universal causal relationship had been recognized; to wit: if A is diagnosed as having mesothelioma and A was exposed to asbestos, A's exposure to asbestos is recognized to be the cause of A's mesothelioma.

Torrejon, 876 So.2d at 892-93. Dr. Kradin himself admits that there are any number of causes of lung cancer and asbestos, being one of them, does not have a causal link by a high degree of probability. SOF at ¶ 116.

## CONCLUSION

Dr. Kradin has failed to follow a reliable methodology and has arrived at his conclusions in the absence of the data that experts in his field require in order to form scientifically-valid opinions, and without considering other potential causes of Plaintiff's diagnosis. Moreover, his opinions and testimony are irrelevant and would mislead the jury. For the foregoing reasons, Exxon respectfully urges this Court to grant this Motion for an Order excluding the testimony and opinions of Plaintiff's expert, Dr. Richard Kradin.

Dated: June 26, 2024

RESPECTFULLY SUBMITTED,

Dennis E. Vega
Dennis E. Vega
**TANENBAUM KEALE LLP**
Three Gateway Center
100 Mulberry Street, Suite 1301
Newark, New Jersey 07102
(973) 242-0002 (T)
(973) 242-8099 (F)
dvega@tktrial.com
*Attorneys for Defendant*
*ExxonMobil Oil Corporation*