UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

SCOTT K. KELLER,

        Plaintiff,

 -v-                                             No.  23-CV-1528-LTS

EXXONMOBIL OIL CORPORATION,

        Defendant.

-------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

        Scott K. Keller ("Plaintiff" or "Keller") brings this action against ExxonMobil Oil Corporation, formerly known as Mobil Oil Corporation ("Defendant" or "Mobil Oil"), asserting a claim pursuant to the Jones Act, 46 U.S.C. section 30104, based on allegations that he suffers from lung cancer developed as a result of exposure to asbestos during Plaintiff's roughly ten years of employment on Defendant's vessels.

        Defendant now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56, seeking to dismiss Plaintiff's claim in its entirety.  (Docket entry no. 30 (the "Rule 56 Motion").)  Defendant also moves to preclude the opinions and testimony of Plaintiff's three expert witnesses, Richard L. Kradin, M.D. (docket entry no. 27 (the "Kradin Motion")), Troy Corbin, CIH, CSP (docket entry no. 33 (the "Corbin Motion")), and Arnold Brody, M.D. (docket entry no. 24 (the "Brody Motion")), pursuant to Federal Rules of Evidence 401, 402, 403, and 702.  Plaintiff moves to preclude certain opinions and testimony of two of Defendant's expert witnesses, Jennifer S. Pierce, Ph.D. (docket entry no. 37 (the "Pierce Motion")), and Aaron

Depres (docket entry no. 40 (the "Depres Motion")),[1] pursuant to Federal Rule of Evidence 702 and pursuant to Federal Rules of Civil Procedure 26 and 37, respectively.

For the following reasons, the Kradin Motion and the Rule 56 Motion are granted. The Brody, Corbin, Pierce, and Depres Motions are denied as moot in light of this outcome.

## BACKGROUND

The following facts are drawn from the parties' submissions in connection with the pending motions and are undisputed except where noted.[2]

From roughly 1970 to 2013, Plaintiff sailed aboard various vessels as a merchant cadet and merchant seaman. (Docket entry no. 61 ("56.1 Reply") ¶ 7.) During Plaintiff's roughly forty-year career, he spent ten years sailing with Mobil Oil, from May 15, 1974, to January 20, 1984. (Id. ¶¶ 7, 11.) Plaintiff sailed on diesel-powered tugboats during his first five years and final two years with Mobil Oil. (Id. ¶¶ 14, 35.) During the intervening years with Mobil Oil, beginning on July 19, 1979,[3] Plaintiff sailed on five different vessels in Mobil Oil's steam tanker fleet: the SS Mobil Lube, the SS Mobil Aero, the SS Mobil Power, the SS Socony-Vacuum, and the SS Mobil Gas. (Id. ¶¶ 22, 25, 27, 29, 31, 33.) Plaintiff also worked in shipyards on at least three separate occasions during his time with the Mobil Oil steam tanker fleet. (Docket entry no. 29-2 ("Keller Tr.") at 119, 122-23, 125.)

Toward the end of his career, around 2012, Plaintiff developed asthma. (Id. at 106, 113.) He was diagnosed with lung cancer in March of 2020 and underwent surgery at that

---

[1]   Plaintiff seeks only to exclude Depres' supplemental expert proffer, not his initial proffer. (See Depres Motion.)

[2]   Citations to paragraphs in the parties' statements submitted pursuant to S.D.N.Y. Local Civil Rule 56.1 incorporate by reference the opposing party's response and the parties' respective evidentiary citations.

[3]   The parties dispute whether Plaintiff's final date of service with the steam tanker fleet was April 28, 1982, or May 9, 1983. (See 56.1 Reply ¶¶ 22, 24).

time.  (56.1 Reply ¶¶ 5-6.)  Plaintiff returns to his pulmonologist roughly every two years for monitoring purposes, but has required no further treatment since the 2020 surgery.  (Keller Tr. at 110-13; 56.1 Reply ¶ 6.)  On February 23, 2023, Plaintiff filed a one-count complaint under the Jones Act, alleging (1) that Mobil Oil was negligent in that it failed, inter alia, to warn Plaintiff about the risks of asbestos and asbestos-containing products and to provide a reasonably safe workplace in which the risks of harmful asbestos contact were mitigated (docket entry no. 1 ("Complaint") ¶ 21), and (2) that Plaintiff developed lung cancer as a direct and proximate result of this negligence (id. ¶¶ 3, 23).

Plaintiff was deposed in connection with this action on October 3, 2023.  (See Keller Tr.)  In response to questioning regarding his service on both Mobil Oil's diesel-powered vessels and the steam tanker fleet, Plaintiff indicated that there was nothing about his work or the work that anyone else performed that he believed may have caused him to come into contact with asbestos, or that he did not know of any such contact.[4]  (56.1 Reply ¶¶ 17-19, 26, 28, 30, 32, 34.)  Thermal insulation work was only performed in Plaintiff's presence during his time with Mobil Oil's steam tanker fleet, not while he was working on its diesel-powered towboats or tugboats.  (Id. ¶ 12.)  Plaintiff did not know whether any of the thermal insulation on any of the Mobil Oil vessels on which he sailed during his career contained asbestos, and he was never told by "personnel, management, or anybody else" that the products he encountered contained asbestos.  (Keller Tr. at 116-17; 56.1 Reply ¶ 13.)  In response to questions as to whether, throughout his time as a merchant mariner, he ever (1) saw anything on any ship that was

---

[4]   Plaintiff was not asked to testify as to each and every vessel and voyage individually (see, e.g., 56.1 Reply ¶¶ 28, 30), but certain of Defendant's questions concerned Plaintiff's experience with Mobil Oil or as a merchant mariner as a whole.  (See, e.g., id. ¶ 13; Keller Tr. at 114-15.)

labelled "asbestos," (2) was told by anyone that there was asbestos on any ship he served aboard, or (3) was given any more specific information about his work in the maritime industry that may have caused him to come into contact with asbestos, he answered "no," with the exception of one incident that occurred after Plaintiff's service with Mobil Oil. (Keller Tr. at 97-99, 114-15.)

Plaintiff has also proffered the following lay and expert testimony that is relevant to this motion practice.

Lay Testimony – Three Former Mobil Oil Employees

Plaintiff proffered lay testimony from three individuals who worked for Mobil Oil during the same time period as Plaintiff, and whose service overlapped with Plaintiff's on certain vessels: James Bolton ("Bolton"), Michael Nedvesky ("Nedvesky"), and Douglas J. Palys ("Palys"). The material aspects of the Bolton and Nedvesky testimony are summarized here. The Palys testimony is not summarized because it was not reviewed or relied on by Plaintiff's medical causation expert, Dr. Kradin,[5] whose testimony is reviewed below.

James Bolton

Bolton served as a cook in the steward department during his voyages with Mobil Oil, some of which overlapped with Plaintiff's voyages. (56.1 Reply ¶¶ 44-45.) He testified that Plaintiff's "name sound[ed] familiar," but he did not work in the same department or area of the vessel as Plaintiff, and had no particular memories concerning Plaintiff. (Id.) When asked whether he believed anything about his job as a cook on Mobil Oil steam tankers involved any kind of asbestos, he replied, "I don't think so." (Docket entry no. 48-10 ("Bolton Tr.") at 16.) When asked if he recalled being on any Mobil Oil steam tankers when other people were doing

---

[5] (See docket entry no. 29-1 ("Kradin Report") at 3 (listing materials reviewed in connection with the report); docket entry no. 29-3 ("Kradin Tr.") at 11 (confirming that Dr. Kradin only relied on the materials listed in the report prior to authoring the report).)

work that he believes may have involved asbestos, he testified that he did not know. (Id.) Bolton never learned of any asbestos present on any Mobil Oil tankers while aboard those vessels, or in the time since his employment with Mobil Oil. (Id. at 17; see also 56.1 Reply ¶ 45.)

Michael Nedvesky

Nedvesky worked as an able-bodied seaman and ordinary seaman in the deck department during several voyages that overlapped with Plaintiff's. (Docket entry no. 48-8 ("Nedvesky Tr.") at 20-23; 56.1 Reply ¶ 46.) Nedvesky's duties included "painting, splicing lines, busting rust," deck maintenance, and occasionally cleaning up trash following a shipyard stay. (Nedvesky Tr. at 10, 13-14.) Nedvesky testified that he also assisted in moving some insulation from the deck to the engine room on a handful of occasions, although he could not remember the particular voyages on which he did this work, the manufacturer of the insulation, or the material from which the insulation was made. (Id. at 23-25.) He further testified that he "vaguely remember[ed]" Plaintiff (id. at 8), but did not recall working in the same area at the same time as Plaintiff on any ship. (Id. at 11, 13, 15-16, 18, 27, 34-35.)

When asked about asbestos exposure aboard Mobil Oil's ships, Nedvesky testified that he "didn't know that much about asbestos exposure" during the time when he was sailing, and that "[i]t was only years later that things that [he] observed at that time would come to mind." (Id. at 30.) He noted that, "[p]articularly in the passageways [of Mobil Oil's ships] there were overhead pipes that were encapsulated with insulation that we didn't know at the time were asbestos," which would be stripped and replaced, creating dust clouds, and would also vibrate and produce fine dust. (Id. at 30-32.) He further testified that this insulation "in all fairness [was] probably asbestos," but was never told nor read at the time of his service that any

of the materials he worked with or around contained asbestos, and he never saw any information regarding the presence of asbestos on Mobil Oil tanker ships and shipyards in the time since his employment with Mobil Oil. (Id. at 38-39, 43.)

Expert Testimony – Dr. Richard L. Kradin

Plaintiff's medical expert, Richard L. Kradin, M.D. ("Dr. Kradin"), is a pulmonologist and pathologist who is board certified in Internal Medicine, Anatomic Pathology, and Pulmonary Medicine. (Docket entry no. 29-1 ("Kradin Report") at 1; 56.1 Reply ¶ 294.) His qualifications to render medical opinions about causation are not disputed for purposes of the Kradin or Rule 56 Motions.

In connection with this litigation, Dr. Kradin produced a roughly five-page report regarding the underlying cause of Plaintiff's lung cancer. (See Kradin Report.) Dr. Kradin's report first briefly reviews scientific literature concerning the link between asbestos and lung cancer, noting that 2-12% of lung cancers have been estimated to be related to occupational exposure to asbestos, and that the risk of lung cancer following exposure to asbestos is dose-dependent.[6] (Id. at 2.) The next page of the report discusses scientific literature that found members of the Merchant Marines and twentieth-century shipyard workers to be at an increased risk for asbestos-related diseases, including lung cancer, due to asbestos exposure aboard vessels and in shipyards. (Id. at 3.)

In roughly the final one and one-half pages of Dr. Kradin's report, he reviews the specific facts of this case. (Id. at 3-5.) Dr. Kradin lists the materials reviewed to prepare his report as certain of Plaintiff's medical records, his vessel service history and certificates of

---

[6] The contested expert proffer of Arnold Brody, M.D., opines on the general causal relationship between asbestos and lung cancer in more detail in his roughly 47-page report. (See docket entry no. 26-1 (the "Brody Report").)

discharge, the deposition transcripts of Plaintiff, Nedvesky, and Bolton, and fifty microscope slides. (Id. at 3.) Dr. Kradin then reviews Plaintiff's medical and exposure history, noting that Plaintiff "was not certain whether he was exposed to asbestos," and Plaintiff's pathology studies, noting that "[t]here are no pleural plaques," and that, "[n]o asbestos bodies are present" in Plaintiff's tissue samples. (Id. at 4-5.) Dr. Kradin concludes by reviewing Plaintiff's lung cancer diagnosis and prognosis, and stating:

> It is my opinion to a reasonable degree of medical probability that Mr. Keller's lung cancer was caused by his cumulative exposures to asbestos while serving in the Merchant Marines. I cannot exclude a contribution from second-hand smoke while living in his parents' house and while serving on vessels.

(Id. at 5.)

Dr. Kradin was deposed on February 22, 2024, to discuss his report and testimony. (See docket entry no. 29-3 ("Kradin Tr.").) He testified that the materials listed in his report (Kradin Report at 3) were the complete set of materials that he reviewed prior to authoring his report, that he had not reviewed the deposition testimony of Plaintiff's maritime expert and certified industrial hygienist, Troy Corbin, CIH, CSP ("Corbin"), and that he did not see any calculations of Plaintiff's purported exposure to asbestos. (Kradin Tr. at 11, 38-39, 63.)

Dr. Kradin was asked at length about the scientific literature reviewed in his report and the basis for his opinions. He testified that he thought Plaintiff "clearly was repeatedly exposed to asbestos while working 30 years in the Merchant Marines with insulation materials," that "[Plaintiff] probably was not aware that he was being exposed to asbestos," and that Dr. Kradin had attempted to apportion how much of the 30-year time period pertained to Plaintiff's employment with Defendant from Plaintiff's service

list.  (Id. at 13-16.)  Dr. Kradin also testified that he did not look to other contributing factors, outside of asbestos and secondhand smoke, in forming his opinions (id. at 25; see also id at 25-35), and that he did not observe any medical markers for asbestos-related injury after reviewing Plaintiff's pulmonary function tests, radiology reports, and pathology slides (see id. at 44-49; 56.1 Reply ¶ 126).

Dr. Kradin—and Plaintiff generally—did not dispute the fact that radon is a known human carcinogen, considered to be the leading cause of lung cancer among non-smokers in the United States.  (See 56.1 Reply ¶¶ 149-151; Kradin Tr. at 26, 36.)  Plaintiff also does not dispute that, for the past sixty-two years, he has lived in areas designated as "Red Zones" by the U.S. Environmental Protection Agency ("EPA"), indicating potential heightened exposure to radon, and raises no genuine dispute as to the fact that his current home of thirty-three years was tested for radon, which test revealed a 48-hour average of 1.8 pCi/L, above the 1.3 pCi/L minimum level of radon exposure that Dr. Kradin testified would be required to attribute radon to lung cancer.[7]  (56.1 Reply ¶¶ 156-57; Kradin Tr. at 68.)  Dr. Kradin further testified (1) that radon has a dose-

---

[7]  Plaintiff disputes Defendant's contention that the average radon level found measured in Plaintiff's home was 1.8 pCi/L, per testing conducted by Depres, on the basis that Defendant incorrectly cited the exhibit numbers of the initial expert proffer of Depres and Depres's supplemental expert proffer, which latter proffer Plaintiff contests as untimely.  (See Depres Motion; 56.1 Reply ¶ 157.)  Plaintiff's assertion that he could not "appropriately respond because Defendant's citations to the evidence are incorrect" is, as Defendant notes, belied by the fact that Plaintiff moved for exclusion of Depres's supplemental proffer, but not his initial proffer, demonstrating sufficient familiarity with the Depres materials cited to locate Defendant's relevant asserted fact.  (See, e.g., docket entry no. 41 ("Pl. Depres Mem.") at 1 (noting that Depres conducted radon testing in January 2024, and issued his opinions in a report dated January 22, 2024).)  Plaintiff raises no other dispute with respect to the average level of radon calculated pursuant to Depres's testing.  Accordingly, Defendant has not raised a genuine dispute as to the results of the radon testing proffered in the initial Depres Report.

response relationship, meaning the risk of developing lung cancer increases as the dosage and length of exposure to radon increase (Kradin Tr. at 68); (2) that he was unaware of the fact that Plaintiff has historically resided in EPA "Red Zones" [8] (id. at 68-69); and (3) as noted, that he did not look at any other substances or chemicals in arriving at his opinion that lung cancer was caused by Plaintiff's cumulative exposures to asbestos while serving in the Merchant Marines, (see id. at 25 ("I didn't look at any other contributing factors."); id. ("Q. Were you asked to look at radon? A. I wasn't asked to look at radon.")).

PROCEDURAL STANDARD

Summary judgment is to be granted in favor of a moving party if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A fact is considered material if it "might affect the outcome of the suit under the governing law," and an issue of fact is a genuine one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Holtz v. Rockefeller & Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  In determining whether there is a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Johnson v. Killian, 680 F.3d 234, 236 (2d Cir. 2012) (citation omitted).

---

[8]  Dr. Kradin did testify that he "was aware that the level of radon found in Mr. Keller's home was 1.8 [pCi/L]," above the average level of 1.3 pCi/L, but this measurement was drawn from tests conducted by Depres, whose report was not reviewed by Dr. Kradin prior to authoring his own report.  (See 56.1 Reply ¶ 157; Kradin Report at 3; Kradin Tr. at 11; see also id. at 25-26 (noting that he had seen a report with respect to the radon level in Plaintiff's home the morning of the deposition).)

"When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." Cordiano v. Metacon Gun Club, Inc., 575 F.3d 199, 204 (2d Cir. 2009) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). In that event, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." Id. (citing Celotex Corp., 477 U.S. at 322-23). "Where no rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight,' summary judgment must be granted." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (citation omitted).

## Discussion

"The Jones Act provides a federal remedy for seamen injured as a result of negligence." Haney v. Miller's Launch, Inc., 773 F. Supp. 2d 280, 286 (E.D.N.Y. 2010). To prevail on a Jones Act claim, a plaintiff must prove, by a preponderance of the evidence, "(1) that the plaintiff was acting in the course of his employment as a member of the vessel's crew at the time of his injury, (2) that the defendant was the plaintiff's employer, (3) that the defendant was negligent; and (4) that the defendant's negligence caused the plaintiff's injury." Scoran v. Overseas Shipholding Group, Inc., 703 F. Supp. 2d 437, 446 (S.D.N.Y. 2010) (citation omitted). The burden of proof for a Jones Act claim is relaxed in comparison with that for a typical negligence action; under the Act, "a shipowner [will be held] liable for its employee's injuries if the employee proves by a preponderance of the evidence that the shipowner's 'negligence played any part, even the slightest, in producing the injury or death for which damages are sought.'" Lombas v. Moran Towing & Transp. Co., Inc., 899 F. Supp. 1089, 1094 (S.D.N.Y. 1995) (citations omitted).

Expert testimony is often necessary to establish a causal connection between a plaintiff's injury and the alleged hazard, unless the nexus would be obvious to the lay juror.  See Wills v. Amerada Hess Corp., 379 F.3d 32, 46 (2d Cir. 2004).  Where, as here, "an injury has multiple etiologies, expert testimony is necessary to establish causation, even in view of plaintiff's reduced burden to prove causation [under the Jones Act]."  Id.  Moreover, a plaintiff must prove not only that the relevant hazard is capable of causing an injury, i.e., "general causation," but also that the hazard caused the plaintiff's particular injury, i.e., "specific causation."  See id. at 41; Berman v. Mobil Shipping & Transp. Co., No. 14-CV-10025-GBD, 2019 WL 1510941, at *10 (S.D.N.Y. Mar. 27, 2019).

The admissibility of any such expert testimony is governed by Federal Rule of Evidence 702 ("Rule 702"), which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Recent amendments to Rule 702 served to "clarify and emphasize" that the preponderance-of-the-evidence standard from Federal Rule of Evidence 104(a) applies to each of the four criteria set forth in Rule 702.  FED. R. EVID. 702 advisory committee's note to 2023 amendment (noting that prior rulings holding that "the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility" were "incorrect applications of Rules 702 and 104(a)").  Rule 702(d) was also amended "to emphasize

that each expert opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology." Id.

In evaluating the Rule 702 criteria under this preponderance of the evidence standard, the district court serves as a gatekeeper to ensure that admitted expert testimony is both reliable and relevant. Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589, 591 (1993). To that end, expert testimony is inadmissible where it is speculative, conjectural, or conclusory. Navigators Ins. Co. v. Goyard, Inc., 608 F. Supp. 3d 44, 48 (S.D.N.Y. 2022) (citations omitted).

One of Defendant's primary contentions in the instant Rule 56 Motion is that the expert testimony of Dr. Kradin is inadmissible and that, without such testimony, Plaintiff cannot sustain his burden to establish that Plaintiff's injury was specifically caused by asbestos, let alone asbestos exposure during his employment with Defendant. (Docket entry no. 31 ("Def. Mem.") at 6-9, 14-15.) The Court therefore addresses the Kradin Motion before turning to the merits of Defendant's Rule 56 Motion.

Kradin Opinions and Testimony

Defendant argues that the expert testimony of Dr. Kradin, whom Plaintiff identifies as his "specific causation expert" (56.1 Reply ¶ 294), "does not rely on established facts and data pertaining to Plaintiff's alleged asbestos exposure aboard the Mobil Oil vessels that Plaintiff sailed aboard, and therefore Dr. Kradin's opinion is not supported by a reliable methodology." (Docket entry no. 28 ("Def. Kradin Mem.") at 1.) The Court agrees that Plaintiff has not met his burden of demonstrating by a preponderance of the evidence that Dr. Kradin's testimony meets each criterion of reliability under Rule 702.[9] See FED. R. EVID. 702(b)-(d). In

---

[9] Plaintiff argues in opposition to the Kradin Motion that the burden of proof to establish causation in a Jones Act case is "featherweight," citing Torrejon v. Mobil Oil Co., 876 So. 2d 877, 879 (La Ct. App. 2004), for the proposition that, "in a Jones Act case, the

particular, Plaintiff has not established that the opinion relies on sufficient facts or data, and has not made the requisite showings of reliability of Dr. Kradin's methodology and a reliable application of the principles and methods he recites.

As Defendant highlights throughout its briefing, Dr. Kradin did not base his opinions "on any specific testing or any other objective measurement of the actual dose of asbestos that Plaintiff was allegedly exposed to aboard Mobil Oil vessels" (Def. Kradin Mem. at 1; Kradin Tr. at 38-39), despite acknowledging that asbestos is a "dose-response disease," meaning the risk of developing lung cancer and other diseases increases as the dosage and length of exposure increase. (See 56.1 Reply ¶ 120.) Dr. Kradin notably conceded in deposition testimony that he found no evidence of relevant medical markers for an asbestos-related injury while reviewing Plaintiff's medical records in connection with his report. (Id. ¶ 126.) The only evidence relied upon by Dr. Kradin to establish that Plaintiff was, in fact, exposed to asbestos aboard Defendant's vessels was the deposition testimony of Plaintiff and two former Mobil Oil employees, Nedvesky and Bolton. Neither Plaintiff nor either former employee, however, had knowledge of asbestos exposure aboard any of Defendant's vessels, see discussion supra pp. 3-

---

plaintiff is only required to prove general exposure to asbestos aboard the employer's vessel." (Docket entry no. 54 ("Pl. Kradin Mem.") at 8-10 (emphasis in original).) The Second Circuit has, however, rejected the notion that the standards of reliability and credibility used to determine admissibility of expert testimony under Rule 702 and Daubert are also relaxed under the Jones Act. Wills, 379 F.3d at 46-47 ("'[T]he standard of causation [under the Jones Act] . . . and the standards for admission of expert testimony under the Federal Rules of Evidence are distinct issues that do not affect one another.'" (citation omitted)). The Court acknowledges that circumstantial evidence may be used to establish liability under the Jones Act in appropriate circumstances, see discussion infra pp. 17-18, but the parties in Torrejon stipulated that the decedent's injury—mesothelioma—was caused by asbestos exposure. Torrejon, 876 So. 2d at 880. In the instant case, by contrast, specific causation is disputed and Plaintiff's case hinges upon Dr. Kradin's testimony in that regard. (56.1 Reply ¶ 294 ("Dr. Kradin is Plaintiff's specific causation expert.").)

6,[10] and, in any case, "lay opinions of this sort provide an insufficient basis for an expert to extrapolate the amount of toxins to which [a plaintiff] was exposed," Wills, 379 F.3d 32 at 49-50.

Dr. Kradin also cites scientific literature for the proposition that individuals in the Merchant Marines and workers in shipyards are at an increased risk for exposure to asbestos and development of an asbestos-related disease (Kradin Report at 3), but Dr. Kradin did not incorporate specific figures from this literature into his report, and he does not have any kind of maritime expertise that would render his application of such historic third-party exposure information to the facts of this case proper if he had (see, e.g., Kradin Tr. at 38 (Q. Have you seen any calculation of Mr. Keller's actual asbestos dose?  A. I have not seen the calculation made.  I'm not in the position to calculate his dose."; id. at 39 ("Q. . . . [A]re you able to calculate [Plaintiff's] fiber years of exposure aboard Mobil vessels?  A. I don't have the expertise to do that.  Q. Who would have the expertise do that?  A. Industrial hygienist.")).  Dr. Kradin did not review the report or testimony of Plaintiff's maritime expert and certified industrial hygienist prior to authoring his own report or providing deposition testimony.  (Id. at 11, 38-39.)

Plaintiff argues at length that a "quantitative estimate of a patient's asbestos 'dose' exceeding some undefined level" is unnecessary "to attribute lung cancer to a given asbestos exposure," citing the "Helsinki Criteria for Diagnosis and Attribution" ("Helsinki Criteria"), which are "criteria on the attribution of asbestos-related lung cancer," published by a

---

[10] The parties dispute whether it is proper for this Court to consider affidavits sworn to in 2012 by Nedvesky and Palys as evidence that Plaintiff was exposed to asbestos.  (See Pl. Mem. at 13-15; docket entry no. 60 ("Reply Mem.") at 7-8.)  As Dr. Kradin did not rely on these affidavits in connection with his report or testimony (Kradin Report at 3; Kradin Tr. at 11), this dispute does not bear on the Court's analysis of Dr. Kradin's opinions and testimony under Rule 702.

"group of leading experts" from numerous medical fields. (Pl. Kradin Mem. at 5.) Even in the excerpt quoted by Plaintiff, however, the authoring panel discusses the fact that the "relative risk of lung cancer is estimated to increase 0.5-4% for each fiber per cubic centime per year (fiber-years) of cumulative exposure," and that "[c]umulative exposure, on a probability basis, should thus be considered as the main criterion for the attribution of a substantial contribution by asbestos to lung cancer." (Id. at 6 (emphasis added).) As noted, Dr. Kradin provided no computations of Plaintiff's "cumulative exposure" to asbestos in fiber years for any period of Plaintiff's career, such that the probability that Plaintiff's lung cancer could be attributed to said exposure could be determined. (Kradin Tr. at 38-39 (stating that he has seen no calculation of Plaintiff's actual asbestos dose, and is not in a position to calculate Plaintiff's dose)); cf., e.g., Relyea v. Borg Warner Corp., No. 12-CV-3564-DLC, 2015 WL 5567034, at *2 (S.D.N.Y. Sept. 22, 2015) (allowing expert testimony on "cumulative exposure theory" where expert relied upon "specific estimates of the magnitude of [plaintiff's] brake dust exposure provided by [another of plaintiff's experts] as well as scientific literature specifically linking brake dust to asbestos" to apply the Helsinki Criteria to the facts of the case); Mallozzi v. EcoSMART Techs., Inc., 11-CV-2884-SJF-ARL, 2013 WL 2415677, at *9-10 (E.D.N.Y. May 31, 2013) (reviewing case law for proposition that quantified dose is unnecessary where plaintiff proffers sufficient evidence regarding dose and duration that exceeds safe levels). Rather, Dr. Kradin testified in general terms that Plaintiff "clearly was repeatedly exposed to asbestos" over his thirty-year career (Kradin Tr. at 13-14)—despite Dr. Kradin's lack of maritime expertise, the lack of medical markers for asbestos-related injury, and testimony from Plaintiff and his co-workers disclaiming knowledge of such exposure—based upon Dr. Kradin's belief that Plaintiff "was probably not aware that he was being exposed to asbestos." (See id. at 15-16 ("Well, there is no way of

knowing except to say that I think during – during the time frame in which [Plaintiff] was stationed on these Mobil vessels, it's more likely than not that he would have been repeatedly exposed to asbestos-containing materials . . . .").)

In short, Dr. Kradin's opinions and testimony appear to be premised upon an unsupported assumption that Plaintiff was exposed to an unquantified level of asbestos throughout the duration of his career as a merchant mariner. Such evidence falls well short of Rule 702's mandate that expert testimony be "based on sufficient facts or data." See, e.g., Schinder v. Dravo Basic Materials Co., 790 F. App'x 621, 624-25 (5th Cir. 2019) (affirming exclusion of expert opinion that plaintiff's service aboard defendant's vessel was a "contributing factor . . . to his cumulative asbestos fiber exposure, and therefore contributed to his risk of developing mesothelioma," where opinion rested on assumption that plaintiff was exposed to asbestos on the relevant vessel); Wills, 379 F.3d at 48-50 (affirming exclusion of expert testimony regarding specific causation where expert testimony "failed to quantify the dosage of the toxin to which the decedent was allegedly exposed").

Dr. Kradin also failed to adequately explain his decision not to consider radon as a potential cause of Plaintiff's lung cancer, despite acknowledging that radon is a carcinogen and that there is literature identifying radon as the next leading cause of lung cancer after smoking. (Kradin Tr. at 26-27.) As discussed, Plaintiff does not dispute that, for the past sixty-two years, he has lived in EPA-designated "Red Zones" for radon exposure, and there is no dispute that Plaintiff is a non-smoker. (56.1 Reply ¶¶ 156, 161.) "While an expert need not rule out every potential cause in order to satisfy Daubert, the expert's testimony must at least address obvious alternative causes and provide a reasonable explanation for dismissing specific alternate factors identified by the defendant." In re Fosamax Prods. Liab. Litig., 688 F. Supp. 2d 259, 268

(S.D.N.Y. 2010).  In response to questioning regarding Plaintiff's potential exposure to radon, and in Plaintiff's response to Rule 56.1 briefing, Dr. Kradin and Plaintiff simply assert that Dr. Kradin was "not asked to look at radon," which is not a reasonable explanation for excluding radon that is grounded in Dr. Kradin's knowledge, experience, training or education.  (56.1 Reply ¶ 118; Kradin Tr. at 25.)  Dr. Kradin's subsequent deposition testimony regarding his skepticism about radon (Kradin Tr. at 26-27) may have merit, but this post hoc rationale, which is not in any way memorialized in his report, does not indicate that the methods he previously employed to form the opinions contained in the report were reliable.  (Id. at 25 ("A. I didn't look at any other contributing factors [other than asbestos and secondhand smoke].  Q. Were you asked to look at radon?  A. I wasn't asked to look at radon.")); see also, e.g., Wills, 379 F.3d at 45-46 (finding that expert's failure to account for smoking and alcohol habits in reaching conclusions regarding cancer causation, despite concession that they were major risk factors, indicated that the conclusions were "not grounded in reliable scientific methods").

    In sum, Plaintiff has not met his burden of demonstrating by a preponderance of the evidence that Dr. Kradin's testimony is based on sufficient facts or data, is the product of reliable principles and methods, and reflects a reliable application of the principles and methods to the facts of the case, as required by Rule 702.  Accordingly, Dr. Kradin's testimony must be excluded, and the Kradin Motion is granted.

Summary Judgment Motion

    As noted, even toxic tort claims brought under the Jones Act require expert testimony to establish causation where an injury—like lung cancer—has multiple potential etiologies.  See discussion supra pp. 10-11.  Defendant argues that, without the testimony of Dr. Kradin, whom Plaintiff explicitly identifies as his expert on specific causation, Plaintiff cannot

meet his burden to prove causation, and summary judgment is therefore warranted. (Def. Mem. at 6-9.)

Plaintiff disagrees, and repeatedly directs the Court's attention to Badamo v. Chevron U.S.A. Inc., 602 F. Supp. 3d 646 (S.D.N.Y. 2022), a case in which the court denied a motion for summary judgment on a Jones Act claim premised on asbestos exposure. (See Pl. Mem. at 3-7.) The relevant issue in Badamo, however, was whether the plaintiff had indeed been exposed to asbestos on the moving defendant's vessels, rather than the other defendants' vessels, in view of the record evidence; the medical causes of the plaintiff's lung cancer and the reliability of the medical expert's opinion regarding such causes—asbestos and cigarette smoke—were not in dispute. See Badamo, 602 F. Supp. 3d at 655, 659. Because the burden of proof for causation is reduced in a Jones Act case, the court found that the plaintiff's testimony regarding his exposure to asbestos on every ship he boarded, evidence that asbestos was used for insulation during the time period the relevant vessels were constructed, and plaintiff's additional expert testimony were sufficient, taken together, "to support at least a circumstantial case that [the plaintiff] was exposed to asbestos on the [moving defendant's] vessels[.]" Id. at 661-62.

In this case, however, the reliability of the expert testimony proffered by Plaintiff as to what toxin, if any, specifically caused Plaintiff's lung cancer is disputed, its admissibility is governed by Rule 702 and Daubert, and, as discussed extensively above, Plaintiff has failed to carry his burden of demonstrating its admissibility. See discussion supra pp. 12-17 and note 9. Without admissible expert testimony, there is insufficient evidence in the record to support a finding that Plaintiff's lung cancer was specifically caused by exposure to asbestos, whether on Defendant's vessels or otherwise. Defendant's motion for summary judgment is therefore

granted. See Wills, 379 F.3d at 49-50 (affirming grant of summary judgment where record contained no admissible expert testimony on the issue of specific causation).

## CONCLUSION

For the foregoing reasons, Defendant's motion to preclude the testimony of Richard L. Kradin, M.D., and Defendant's motion for summary judgment are granted. Defendant's motion to preclude the testimony of and Troy Corbin, CIH, CSP, and Arnold Brody, M.D., and Plaintiff's motions to preclude the testimony of Aaron Depres and Jennifer S. Pierce, Ph.D., are denied as moot in light of the foregoing determinations.

The Clerk of Court is respectfully directed to enter judgment accordingly, and to close this case. This Memorandum Opinion and Order resolves docket entry nos. 24, 27, 30, 33, 37, and 40.

SO ORDERED.

Dated: New York, New York
March 11, 2025

    /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge